William L. Mauk (ISB No. 1825)
MAUK MILLER & HAWKINS, PLLC
600 E. Riverpark Ln., Ste. 210
Boise, ID  83706
Tel:     (208) 287-8787
Fax:    (208) 287-8788
e-mail:  bill@idahojustice.com

Attorneys for Plaintiff

# IN THE DISTRICT COURT OF THE UNITED STATES

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **D. Scott Bauer**, <br><br> Plaintiff, <br><br> vs. <br><br> **Bonner County, Idaho**, a political subdivision**; Dan McDonald,** in his individual and official capacities**, Jeff Connolly,** in his official capacity**; Steven Bradshaw,** in his official capacity**; and Brad Ptashkin,** in his individual and official capacities, <br><br> Defendants. | Case No.: <br><br> **CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> Judge: |

COMES NOW the Plaintiff, D. Scott Bauer, by and through his undersigned counsel, and for causes of action against the Defendants, states, alleges and avers as follows:

## I. NATURE OF THE CLAIMS

1. This is an action for legal and equitable relief and monetary damages

brought by an attorney, licensed in Idaho and an employee of the office of the Prosecuting Attorney of Bonner County, for the following:

  a. Deprivation of his procedural due process rights related to his employment under the Fourteenth Amendment of the U.S. Constitution, Article I, Section 13 of the Idaho Constitution and 42 U.S.C. § 1983;

  b. Deprivation of his liberty interests in his good name, professional status and reputation under the Fourteenth Amendment of the U.S. Constitution, Article I, Section 13 of the Idaho Constitution and 42 U.S.C. § 1983;

  c. Retaliation and other adverse actions taken against him for engaging in protected activity under Idaho's Protection of Public Employees Act, Idaho Code § 6-2101 et seq; and

  d. Various breach of contract, defamation and other tort claims under Idaho law.

## II. PARTIES

  2. Plaintiff, D. Scott Bauer ("Bauer") is, and at all times pertinent hereto was a resident of Bonner County, Idaho, employed as the Chief Civil Deputy attorney for the Bonner County Prosecutor's Office.

  3. Defendant, Bonner County, is, and at all times pertinent hereto was a political and corporate subdivision of the State of Idaho, consistent with Idaho Code, Section 31-601, with its principal offices in Sandpoint, Idaho, and an "employer" and a "public body" within the meaning of Idaho Code, Sections 6-2103 (4) and (5).

  4. Defendant, Dan McDonald ("McDonald") is and was at all times pertinent hereto the Chair of Board of County Commissioners of Bonner County ("BOCC"), and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103 (4)(b).

McDonald is sued in his official capacity for all wrongful acts and omissions committed by him with authority on behalf of Bonner County or at the behest of the BOCC, and is otherwise sued in his individual/personal capacity.

5. Defendant Jeff Connolly ("Connolly") is and was at all times pertinent hereto a member of the BOCC and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103 (4)(b). Connolly is sued in his official capacity for all wrongful acts and omissions committed by him with authority on behalf of Bonner County or at the behest of the BOCC.

6. Defendant, Steven Bradshaw ("Bradshaw"), is and was at all times pertinent hereto a member of the BOCC and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103 (4)(b). Bradshaw is sued in his official capacity for all wrongful acts and omissions committed by him with authority on behalf of Bonner County or at the behest of the BOCC.

7. Defendant, Brad Ptashkin ("Ptashkin"), is and was at all times pertinent hereto the Chief Information Officer (CIO) for the BOCC and its departments and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103 (4)(b). Ptashkin is sued in his official capacity for all wrongful acts and omissions committed by him with authority on behalf of Bonner County or at the behest of the BOCC, and is otherwise sued in his individual/personal capacity.

8. All authorized acts and omissions attributable to the individuals named herein, including but not limited to McDonald, Connolly, Bradshaw and Ptashkin, are imputed to and the legal responsibility of Bonner County by virtue of the principles of agency, the doctrine of respondeat superior, and federal and state law authorizing imputation of such responsibility.

### III. JURISDICTION AND VENUE

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a)(3) with respect to Plaintiff's claims arising under federal law.

10. At all times material hereto, the officials, employees and agents of Bonner County acting within the scope of their employment or agency acted under the color of statutes, ordinances and public policies of Bonner County and/or the State of Idaho.

11. This Court further has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 (a).

12. Venue is proper with this Court under 28 U.S.C. § 1391 as the Defendant Bonner County is an Idaho political subdivision, the individual Defendants reside and work in Idaho, and the wrongful conduct alleged herein occurred within the jurisdiction of this Court.

13. Plaintiff's federal and state causes of action arise out of a common nucleus of related and operative facts.

### IV. EXHAUSTION AND AUTHORIZATION FOR SUIT

14. With respect to Plaintiff's claims and causes of action, Plaintiff has exercised and exhausted all administrative remedies and conditions precedent, if any, required by applicable federal and Idaho law and/or the policies of Bonner County.

15. In particular, but without limitation,

    a. On December 28, 2021 Plaintiff duly filed a grievance and harassment complaint (herein "Grievance") with Bonner County in compliance and conformance with the Bonner County Personnel Policy Manual ("BCPM");

    b. On December 28, 2021 Plaintiff also duly filed a Notice of Tort

Claim with Bonner County;

   c. On January 2, 2022, Plaintiff duly filed an amended grievance and harassment complaint ("Second Grievance") with Bonner County also in compliance and conformance with the BCPM;

   d. On December 28, 2021, Plaintiff duly filed a complaint and request for name clearing ("Name Clearing Request") with Bonner County in compliance and conformance with the BCPM, including BCPM Policy 1000.2.

   e. On January 2, 2022, Plaintiff duly filed an Amended Name-Clearing Request with Bonner County also in compliance and conformance with the BCPM and Policy 1000.2.

 16. In response to Plaintiff's Grievance and Second Grievance, the Director of Human Resources of Bonner County retained an independent law firm to thoroughly investigate Plaintiff's complaints.

 17. In the course of that investigation, the County Commissioners—namely, McDonald, Connolly and Bradshaw—and the CIO, Ptashkin, refused to cooperate and engage with the investigation at any level.

 18. Instead, according to the investigators, these Defendants instructed other County employees not to cooperate, did not allow and purposefully blocked the investigator's access to pertinent documents, records and emails, denied access to the County's computer systems, and confused and frustrated the proper procedure of the investigation at multiple points.

 19. On or about May 11, 2022, the investigators issued their findings and report to the Director of Human Resources. Among other things, the report concludes that:

      a.      The Commissioners and the BOCC retaliated against the Plaintiff because, in his capacity as Chief Civil Deputy Attorney assigned to the BOCC, Bauer gave them legal advice that was contrary to what they wanted to hear.

      b.      The advice Plaintiff provided the Commissioners—in particular regarding each constitutional officer and elected official having custody and control over the electronic/computer stored data of their respective offices—was sound and legally correct according to Bauer's boss, the Prosecuting Attorney of Bonner County.

      c.      As a consequence, the Commissioners sought to have Bauer removed from the building where the Commissioners' offices are located and forced the removal of Bauer as legal advisor to the Commission, thereby depriving Bauer of the majority of his job duties and substantially interfering with his ability to do his job in the elected Prosecutor's office.

20.      In addition, the investigators found that:

      a.      Commissioner McDonald publicly insulted Bauer with multiple emails attacking his competence, erroneously blamed Bauer for concerns raised by a citizen complaint, and accused Bauer of the misuse of County funds.

      b.      Commissioners McDonald and Connolly and CIO Ptashkin further accused Bauer of criminal and unethical behavior and publicly published information tending to harm Bauer's reputation for truthfulness.

21.      Based on their supported findings the investigators concluded that:

      a.      Bauer was harassed by Commissioner McDonald in violation of Bonner County's harassment policy, and

      b.      Commissioners McDonald and Connolly and CIO Ptashkin spread malicious rumors about Bauer in violation of County policy.

22. Despite the Plaintiff's repeated Name Clearing Requests, and the findings and conclusions of the County's internal investigation, Bonner County has not abided by its BCPM Policies, has evaded providing Plaintiff with a procedurally adequate and effective process to clear his good name from the false and stigmatizing accusations of the Defendants, and has taken no action whatsoever, internal or external to the County government, that is in any way remedial to the damage wrongfully caused to his professional stature, reputation, honor and integrity.

## IV. GENERAL ALLEGATIONS

23. Plaintiff is an attorney at law duly licensed to practice law by the State of Idaho.

24. As a licensed Idaho attorney, the legal advice, counsel and representation Plaintiff provides to his legal clients and his other law related conduct is subject to and governed in part by the Idaho Rules of Professional Conduct, which are public policies of the State of Idaho.

25. Since November 1, 2007, Plaintiff has been employed as a lawyer by the Prosecuting Attorney's Office of Bonner County.

26. The Prosecuting Attorney of Bonner County, Louis Marshall ("Marshall"), is an elected official filling a position created by Article V, Section 18 of the Idaho Constitution, independent of and not beholding or subordinate to the County Commission of Bonner County.

27. As an independent county constitutional officer, the Prosecuting Attorney of Bonner County has the authority and independent responsibility to employ such deputy attorneys as he deems necessary to assist it carrying out the duties and functions of his office.

28. Pursuant to Idaho Code, Section 31-2604 it is the duty of the Bonner County

Prosecuting Attorney, as well as those attorneys employed and designated by him

> "To give advice to the board of county commissioners, and other public officers of the county, when requested in all public matters arising in the conduct of the public business entrusted to the care of such officers."

29. The sheriff, prosecuting attorney, assessor, treasurer, auditor, recorder and coroner of Bonner County are each county constitutional officers ("CCOs") pursuant to the Idaho Constitution, Art. XVIII, § 6, with duties, authorities, powers and responsibilities independent and separate from the BOCC of Bonner County and its Commissioners.

30. Since 2020, Plaintiff has served as the Chief Civil Deputy Prosecutor of Bonner County, independently hired and exclusively supervised by Louis Marshall.

31. As such, it has been Plaintiff's duty and responsibility to provide legal advice and counsel to the BOCC of Bonner County and the Commission's various offices, departments and employees, as well as all other Bonner County CCOs and their offices, departments and employees.

32. As the Chief Civil Deputy, the majority of Plaintiff's time and work activity has been devoted to advising and representing the BOCC and its Commissioners on matters arising in the scope and conduct of public business entrusted to them.

33. In recent years, the CCOs and their respective offices have given considerable focused discussion and consideration to the collection, storage, management, use, control and privacy of documents, information and data pertinent to their respective offices.

34. As one of the products of these discussions, the BOCC expressed and pursued a desire to consolidate and centrally manage the electronic data of all the various County

offices, and to create a new CIO position managing that activity. This eventually led to a discussion with their legal counsel (Bauer) regarding the lawful scope of activities, authorities, responsibilities, limitations and legal obligations of the new CIO.

35. Throughout 2020 and 2021, Plaintiff advised the Commissioners and other elected officials that according to Idaho law each elected CCO is the legal custodian of all information, documents, records and datatypes relating to and within the scope of their official duties.

36. He further advised specifically that it would be a violation of law for the Commissioners or their CIO not to recognize and defer to other elected officials as the rightful data-controllers of the management, decision-making and control of their respective information technology and data.

37. Shortly thereafter, the Commissioners appointed Ptashkin as their CIO.

38. Although Ptashkin and McDonald initially agreed to follow Bauer's legal advice and approved the CIO job description he drafted, within a short time thereafter and continuing throughout 2021, these Defendants embarked on a concerted effort to ignore the CIO job description, resist and evade Bauer's legal advice, and circumvent the legal duties owed to the other CCOs; in particular, the legal requirement to obtain prior consent from these legal custodians regarding the storage, privacy and control of their proprietary records and data.

39. When McDonald and Ptashkin started getting push-back from Bauer and from the other CCOs he represented and advised, these Defendants engaged in a course of conduct to intimidate, harass, discredit, and otherwise impair Bauer's integrity, professional competence and his legal advice to other CCOs. This included:

    a.    False accusations and innuendos made by them to Marshall and other

County employees that Bauer had installed computer software to hack McDonald's and Connolly's County email accounts;

      b.    Interfering with Bauer's legal review of IT matters by obstructing him from gaining proper access to software demonstrations, data visualization consuls and approved training essential to his providing continuing legal advice regarding cloud storage and related software contracts with the County; and

      c.    Rushing IT related contracts so that Bauer could not provide a proper legal review, thereby evading Bauer's prior approval as the County's chief civil attorney before the contracts were approved by the Commission and/or Ptashkin.

40.    During an email exchange between Bauer and McDonald in earlier December 2021, Bauer insisted that, consistent with the provisions of the approved CIO job description, Ptashkin could not put the official data of other elected officials and their agencies into cloud storage or processing without first securing the informed approval from each of the elected officials legally responsible for and controlling the data.

41.    Within days thereafter, the BOCC amended the CIO job description eliminating any express delineation of the elected official's data custody rights, in contravention of Bauer's legal advice that it would be in violation of the applicable law and in direct conflict with the legal interests and rights of the other CCOs Bauer represented.

42.    On January 3, 2022, at the insistence of the BOCC, Bauer was removed as legal counsel to the BOCC and all the Commission controlled departments in Bonner County.

43.    Since this interference with Bauer's employment with the Prosecutor's Office, McDonald has stated and/or implied to individuals within and without of the Bonner County government that Plaintiff's removal was due to incompetence.

44.    In response to a tort claim notice Bauer filed after learning that McDonald

continued to disseminate defamatory computer crime allegations against him, McDonald posted on a Facebook page of a group known as American Redoubt the following:

"This is what happens when you try to drain the swamp, aka Good Old Boys network here in Bonner County.  They fabricate accusations based on hearsay.  The swamp or good old boys' network, doesn't work for people of the County but rather only looks to feather their own bed via taxpayer dollars."

## V.  INCORPORATION

45. Plaintiff hereby alleges and incorporates all of the foregoing allegations and averments in Paragraphs 1 through 44 in each and every cause of action stated herein.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(*Deprivation of Plaintiff's Liberty Interest in Violation of the U.S. Constitution, the Idaho Constitution and 42 U.S.C. 1983*)

46. Bauer has a liberty interest in his good name, reputation, professional stature, and continuing and future employment.

47. Defendants infringed upon Bauer's liberty interest by impugning his good name, honor, and integrity.

48. As a partial result of the spread of McDonald and Ptashkin's stigmatizing statements falsely and baselessly accusing Bauer of computer crime and incompetence against the County, the Commissioner's decided to significantly demote Bauer by means of dismissing Plaintiff from representing the Commissioners and their departments.

49. Bauer represented the Commission and its departments from November 1, 2007 through January 3, 2021.

50. The spread of McDonald's and Ptashkin's accusations of dishonesty, criminality, and incompetence against Bauer have been circulated by them throughout the County's upper-level management and beyond, thereby impugning Bauer's professional stature and reputation in such a fashion as to effectively put a significant roadblock to Bauer's continued ability to practice his profession within County government and, inevitably, throughout his future legal career.

51. McDonald publicly disseminated false and baseless allegations against Bauer as statements of fact expressly and by implication in social media and public email before and after Bauer requested a name clearing hearing.

52. The employment decision to dismiss Bauer from serving as the attorney for the BOCC and its departments was made public by Bauer's manifest absence at public BOCC meetings necessarily flowing from the demotion decision and additionally through dissemination to BOCC mid-level department managers.

53. Although Bauer timely and properly requested a name clearing hearing under the BCPM, Bauer was never provided any hearing or meaningful opportunity to be heard, to expunge the false accusations made against him and to remedy the damage done to his good name and legal career.

54. Bauer's request for a name clearing hearing was made on January 2, 2022 and was to be completed within 10-days pursuant to the BCPM.

55. After Bauer requested a name clearing hearing McDonald continued his name smearing campaign against Bauer to the public and within the Bonner government.

56. Bauer agreed to extend the time for a name clearing hearing for a short time so that Bonner County could investigate his Grievances.

57. The investigatory report was completed May 11, 2022.

58. McDonald, Ptashkin, and Connolly refused to cooperate in the investigation on any level whatsoever, and actually impaired the ability to conduct the investigation.

59. Bonner County's investigation concluded that McDonald, Connolly, and Ptashkin defamed Bauer, engaged in harassment against him and retaliated against him.

60. The above identified negative actions and statements of the Defendants impose a stigma on Bauer's professional reputation, putting roadblocks in Bauer's ability to properly represent the other elected officials of Bonner County and impairing his professional future representing other public and private clients.

61. As a result of Defendants' wrongful conduct, Bauer's professional reputation has been adversely impacted and it has foreclosed other employment opportunities in his profession.

62. At all times relevant hereto, Defendants acted under color of state law when committing the acts complained of.

63. Defendant Bonner County and thee BOCC had final policy making authority as it pertained to their departments and powers and exercised that authority in Plaintiff's dismissal and the denial of due process.

64. Defendants acted deliberately in violating Bauer's rights under the Fourteenth Amendment to the U.S. Constitution and the Idaho Constitution.

65. The individual Defendants' misconduct addresses herein violated Plaintiff's clearly established constitutional right to substantive due process of which a reasonable person would have known.

66. Bauer is entitled, pursuant to 42 U.S.C. 1983 and the laws of the State of Idaho, to all available relief, including future lost wages, compensatory damages, emotional distress damages, as well as costs and attorney fees.

67. The individual Defendants' conduct was willful and intentional, malicious, and exhibits reckless or callous indifference to Bauer's constitutional rights, thereby entitling him to punitive damages.

SECOND CAUSE OF ACTION

*(Deprivation of Plaintiff's Property Interest*

*in Employment Without Due Process)*

68. Plaintiff was employed by the Prosecuting Attorney of Bonner County, not the Commissioners or BOCC, and was subject to the exclusive direction, management and supervision of the Prosecuting Attorney, not the Commissioners or the BOCC.

69. The legal relationship between Plaintiff and Bonner County was a contractual relationship.

70. Plaintiff's contractual relationship was at all times a protected property interest within the meaning and guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution.

71. Without lawful authority or purpose, the Defendant Commissioners of Bonner County intentionally interfered with, materially diminished, permanently impaired, and breached Plaintiff's contractual relationship with the Prosecuting Attorney and with County.

72. In so doing, it deprived Plaintiff of property without due process of law.

73. As part of Plaintiff's contractual relationship, Bonner County published and extended to Bauer a host of express personnel policies affecting the terms, conditions, rights, promises and assurances of Plaintiff's employment.

74. Those policies, expressed in part in the BCPM, provided the following:

    a. A grievance procedure which encourages and allows employees to lodge workplace related complaints and concerns with the express promise and assurance "that they will not be retaliated against for bringing concerns forward under this procedure and will make every effort to resolve the concern or question on a fair and equitable basis." (BCPM Policy 900)

    b. A name clearing procedure regarding allegations of misconduct involving unlawful discrimination, dishonesty, immorality or criminal conduct. (BCPM Policy 1000.2)

    c. An express commitment by Bonner County "to provide a work environment where its employees and those served by the County are treated respectfully and free of harassment." (BCPM Policy 1001)

    d. A prohibition of general harassment, defined as "conduct that is insulting, degrading and shows hostility toward an individual such that it interferes with the individual's work environment and performance." (BCPM Policy 1001.3)

    e. Procedures for the reporting and prompt investigation of complaints of harassment and taking remedial action against the harasser commensurate with the severity of the offense. (BCPM Policy 1001.5 and 1001.6)

    f. Imposing on all management personnel of Bonner County, including the named the Defendants, the responsibility "for assisting and cooperating in any investigation that is conducted," (BCPM Policy 1001.5)

    g. An obligation on the part of all employees "respecting the <u>rights</u> of others to be free from harassment and acts of retaliation," (BCPM Policy 1001.7)

    h. An express promise and assurance that "[r]etaliation against someone who

reports harassment or discrimination, or who participates in an investigation, is strictly prohibited." (BCPM Policy 1001.7)

75. In contradiction of any suggestion that the promises and guarantees of these policies are not contractual, but merely illusory, the BCPM expresses in the introduction that the policies "apply to all terms and conditions of employment." (BCPM Policy 1001)

76. The wrongful acts and omissions of Defendants taken adverse to Plaintiff and described in part herein were in violation and contradiction of the BCPM policies, in breach of Bauer's contractual employment relationship, and in denial and deprivation of Plaintiff's due process rights and protections.

77. Defendants' acted deliberately in violating Bauer's rights under the Fourteenth Amendment to the U.S. Constitution and Article I, Section 13 of the Idaho Constitution.

78. Defendants' conduct violated the clearly established constitutional right to due process of which a reasonable person would have known.

79. Bauer has been injured by Defendants' conduct and has suffered and will continue to suffer losses.

80. The individual Defendants' conduct was willful and intentional, malicious, and exhibits reckless or callous indifference to Bauer's constitutional rights thereby entitling him to punitive damages.

## THIRD CAUSE OF ACTION

*(Violation of Idaho Protection of Public Employees Act)*

81. Plaintiff hereby additionally incorporates by reference all of the allegations contained in paragraphs 68 through 80 above as part of this cause of action.

82. The legal advice and other communications Bauer had with the Defendants, described in large part herein above, was protected activity within the purview and

protection of the Idaho Protection of Public Employees Act, Idaho Code § 6-2101 et seq.

83. The legal advice and related communications Bauer had with the Defendants was consistent with the Idaho Code of Professional Responsibilities, his duties and obligations as a licensed attorney, and as the Chief Civil Deputy of Bonner County.

84. The advice and other communications were in the interest of avoiding waste of public funds and personnel, and further avoiding or responding to violations or potential, suspected and anticipated violations of law.

85. The advice and other communications were made in good faith with a reasonable basis in fact, in law and in Bauer's professional judgment as the Defendants' attorney.

86. Because the Defendants did not like and accept Bauer's advice and counsel, they at various times ignored, resisted and refused to follow his legal advice.

87. In response, the Defendants took adverse action against him within the scope and meaning of Idaho Code, § 6-2103(1).

88. Such adverse action included, without limitation:

    a. interfering with and disrupting Bauer's employment relationship with Bonner County, the Prosecuting Attorney and his attorney client relationship with other CCOs;

    b. impairing and disrupting the terms, conditions, locations, rights and privileges of his employment;

    c. dismissing Bauer from providing legal advice to the BOCC and its departments;

    d. coercing the Prosecuting Attorney to accept the Commissioner's dismissal ultimatum; and

    e. frustrating compliance with and refusing to follow the personnel policies

of the BCPM guaranteed to all County employees.

89.     As the proximate cause of such adverse action, Plaintiff has suffered and sustained past and future damage and loss for which he is entitled to remedy and recovery, more particularly addressed in Plaintiff's prayer for relief, below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants awarding the following relief:

A.      For reinstatement to his former position of employment with the full stature and responsibilities of that position comparable in stature, status, salary, benefits, advancement opportunities, responsibilities and other incidents of employment;

B.      For all his actual economic losses and damages, past and future, direct, incidental and consequential, including but not limited to back pay, front pay, income loss and benefit loss;

C.      For general and compensatory losses and damage in the amount of $300,000.00, or such greater amount as shall be proven at trial;

D.      For injunctive relief and for additional equitable relief, including ordering the Defendant to take affirmative action, as this Court deems appropriate based upon the proof at trial or at a proper post-judgment hearing regarding such relief;

E.      For punitive damages as allowed;

F.      For pre-judgment and post-judgment interest;

G.  For an award of all costs and reasonable attorney fees incurred in the prosecution of this action and in all preliminary and administrative proceedings related thereto; and

H.  For such other and further relief as this Court deems just and equitable in the premises.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial by a jury of twelve persons on all counts, claims and causes of action triable by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this 1st day of July, 2022.

**MAUK MILLER & HAWKINS, PLLC**

_____
William L. Mauk, of the Firm
Attorneys for Plaintiff