Jesse Wing (admitted *pro hac vice*)
Joe Shaeffer (admitted *pro hac vice*)
Anika Ades (admitted *pro hac vice*)
MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, WA 98104
Tel: (206) 622-1604   Fax: (206) 343-3961
E-mail: jessew@mhb.com; joe@mhb.com; anikaa@mhb.com

April M. Linscott, ISB #7036
OWENS, MCCREA & LINSCOTT, PLLC
6500 N. Mineral Dr. Ste. 103
Coeur d'Alene, ID 83815
Telephone: (208) 762-0203
Email:   alinscott@omllaw.com

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **D. Scott Bauer**,<br><br>     Plaintiff,<br><br>vs.<br><br>**Bonner County, Idaho**, **Dan McDonald,** in his individual capacity, **and Brad Ptashkin,** in his individual capacity,<br><br>     Defendants. | Case No.: 2:22-CV-00270-AKB<br><br>**FOURTH AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Judge:  Amanda K. Brailsford |

### NATURE OF THE CLAIMS

1.      Plaintiff alleges that his employer and several of its managing officials retaliated against him for exercising his First Amendment-protected rights to pursue legal claims and for his whistleblowing, defamed him, and harmed his professional reputation

and standing as a lawyer without affording him Constitutionally mandated due process.

## II. PARTIES

2.      Plaintiff, D. Scott Bauer ("Bauer") is, and at all times pertinent hereto was a resident of Bonner County, Idaho and employed as a deputy attorney for the Bonner County Prosecutor's Office.

3.      Defendant, Bonner County, is, and at all times pertinent hereto was a political and corporate subdivision of the State of Idaho, consistent with Idaho Code, Section 31-601, with its principal offices in Sandpoint, Idaho, and an "employer" and a "public body" within the meaning of Idaho Code, Sections 6-2103 (4) and (5).

4.      Defendant Dan McDonald ("McDonald") was at times pertinent the Chair of Board of County Commissioners of Bonner County ("BOCC"), and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103 (4)(b).

5.      Defendant Brad Ptashkin ("Ptashkin") was at all times pertinent the Chief Information Officer ("CIO") for the BOCC and its departments and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103 (4)(b).

6.      The individuals named herein, including but not limited to McDonald and Ptashkin, committed the acts herein described within the scope of their employment or agency for Bonner County, under color of law. The Individual Defendants had final policy making authority as it pertained to the BOCC and the departments they oversaw, and exercised that authority directly causing harm to Plaintiff or setting in motion the actions that caused him harm.

## III. JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a)(3) with respect to Plaintiff's claims arising under federal

law.

8.     This Court further has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 (a).

9.     Venue is proper with this Court under 28 U.S.C. § 1391 as the Defendant Bonner County is an Idaho political subdivision, the individual Defendants reside and work in Idaho, and the wrongful conduct alleged herein occurred within the jurisdiction of this Court.

10.     Plaintiff's federal and state causes of action arise out of a common nucleus of related and operative facts.

## IV. EXHAUSTION

11.     Plaintiff has exhausted all administrative remedies and conditions precedent, if any, required by law.

12.     In particular, but without limitation,

    a.     On December 28, 2021, Plaintiff filed a grievance and harassment complaint (herein "Grievance");

    b.     On January 2, 2022, Plaintiff filed an amended grievance and harassment complaint ("Second Grievance") with Bonner County;

    c.     On December 28, 2021, Plaintiff filed a complaint and request for name-clearing ("Name-Clearing Request") with Bonner County.

    d.     On January 2, 2022, Plaintiff filed an Amended Name-Clearing Request with Bonner County.

13.     In response to Plaintiff's Grievance and Second Grievance, the Director of Human Resources of Bonner County hired an independent law firm to thoroughly investigate Plaintiff's complaints.

14. The County Commissioners—namely, Defendants McDonald, and the CIO, Defendant Ptashkin, refused to cooperate with the investigation.

15. Instead, these Defendants instructed other County employees not to cooperate with the investigators, did not allow and purposefully blocked the investigator's access to documents, records, and emails, denied them access to the County's computer systems, and confused and frustrated the investigation at multiple points.

16. On or about May 11, 2022, the investigators issued their findings and report to the Director of Human Resources. Among other things, the report concluded that:

    a. The Commissioners and the BOCC retaliated against the Plaintiff because Bauer told them their planned actions would violate the law, by removing Bauer as their legal advisor, substantially interfering with his job; and

    b. The advice Plaintiff provided to the Commissioners was legally correct.

17. In addition, the investigators found that:

    a. Commissioner McDonald, in multiple emails, publicly attacked Bauer's competence and erroneously blamed him for concerns raised by a citizen complaint.

    b. Commissioners McDonald and Connolly and CIO Ptashkin accused Bauer of illegal and unethical behavior and Commissioner McDonald publicly published information to harm Bauer's reputation for truthfulness.

18. The investigators found their accusations against Bauer unsupported. They concluded that:

    a. Commissioner McDonald harassed Bauer in violation of Bonner County's harassment policy; and

b. Commissioners McDonald and Connolly and CIO Ptashkin spread malicious rumors about Bauer in violation of County policy.

19. On November 16, 2022, Bauer filed a third grievance and harassment complaint ("Third Grievance") with Bonner County in compliance and conformance with the Bonner County Policy Manual (BCPM) alleging that McDonald, in retaliation for Bauer filing this lawsuit and related grievances and tort claims, and additionally published retaliatory and defamatory statements on Facebook and in other venues falsely and maliciously alleging Bauer bullied former Fair Manager Darcey Smith into suicide. Bauer's grievance also stated that McDonald harassed and retaliated against Bauer by forcing Bauer's removal as Fair Board legal advisor in retaliation for Bauer providing accurate legal advice to the Fair Board and in retaliation for Bauer filing the instant lawsuit and in an effort to cover-up potential misconduct at the Fairgrounds.

20. In response to Plaintiff's Third Grievance, Prosecutor Louis Marshall requested an outside investigation that concluded that Commissioner McDonald's conduct may have amounted to several violations of the Bonner County policy manual against Bauer and amounted to general harassment against Bauer.

21. Despite the Plaintiff's repeated Name-Clearing Requests, and the findings and conclusions of its internal investigation, Bonner County has not abided by its BCPM Policies, has evaded providing Plaintiff with a procedurally adequate and effective process to clear his good name from the false and stigmatizing accusations of the Defendants, and has taken no action whatsoever, internal or external to the County government, that is in any way remedial to the damage wrongfully caused to his professional stature, reputation, honor, and integrity.

22. On May 18, 2023, Bauer filed a fourth retaliation grievance ("Fourth

Grievance") with Bonner County in compliance and conformance with the BCPM.

23.   On May 24, 2023, Plaintiff submitted to the County a written request for a name clearing hearing regarding his Fourth Grievance, and the following day, he submitted a supplement to his Grievance.

24.   On June 6, 2023, the County declined to investigate Plaintiff's Fourth Grievance on the grounds that "is not practical nor likely to lead to any additional information."

## V. FACTS

25.   Plaintiff is an attorney licensed to practice law in the State of Idaho.

26.   As a licensed Idaho attorney, the legal advice, counsel, and representation Plaintiff provides to his legal clients and his other law-related conduct is subject to and governed in part by the Idaho Rules of Professional Conduct, which are public policies of the State of Idaho.

27.   Since November 1, 2007, Plaintiff has been employed as a lawyer by the Prosecuting Attorney's Office of Bonner County.

28.   Pursuant to Idaho Code, Section 31-2604 it is the duty of the Bonner County Prosecuting Attorney, as well as those attorneys employed and designated by him, such as Plaintiff,

> "To give advice to the board of county commissioners, and other public officers of the county, when requested in all public matters arising in the conduct of the public business entrusted to the care of such officers."

29.   Since 2020, Plaintiff has served as the Chief Civil Deputy Prosecutor of Bonner County, independently hired and exclusively supervised by Louis Marshall.

30.   As such, it has been Plaintiff's duty and responsibility to provide legal advice

and counsel to the BOCC of Bonner County and the Commission's various offices, departments, and employees. It has also been Plaintiff's duty and responsibility to provide legal advice to as the other Bonner County elected officials, such as the sheriff, prosecuting attorney, assessor, treasurer, auditor, recorder, and coroner of Bonner County, each of which are county constitutional officers ("CCO") pursuant to the Idaho Constitution, Art. XVIII, § 6, with duties, authorities, powers, and responsibilities independent and separate from the BOCC of Bonner County and its Commissioners, and their offices, departments, and employees.

31. Until January 3, 2022, as the Chief Civil Deputy, the majority of Plaintiff's time and work activity has been devoted to advising and representing the BOCC and its Commissioners on matters arising in the scope and conduct of public business entrusted to them.

32. In recent years, the CCOs and their respective offices have given considerable focused discussion to the collection, storage, management, use, control, and privacy of documents, information, and data pertinent to their respective offices.

33. As a product of these discussions, the BOCC pursuant to Bauer's legal advice approved a new CIO Job Description and appointed its first CIO. This CIO job description explicitly recognized each CCO's data control rights.

34. Throughout 2020 and 2021, Plaintiff advised the Commissioners and other elected officials that according to Idaho law each elected CCO is the legal custodian of all information, documents, records, and datatypes relating to and within the scope of their official duties.

35. Plaintiff further advised the Commissioners specifically that it would be a violation of law for the Commissioners or their technologists to interfere with other

elected officials control of the management and decision-making over their respective information technology and data.

36.     Shortly thereafter, the Commissioners formally adopted a job description of a CIO, identifying the scope of the CIO's duties as limited to the BOCC, and appointed Defendant Ptashkin as their CIO.

37.     Next, these Defendants embarked on a concerted effort to disregard the limitations set forth in the CIO job description, resist and evade Bauer's legal advice, and circumvent the legal duties owed to the other CCOs by taking actions to manage and control the storage and privacy of some of the other CCO's proprietary records and data without their informed consent.

38.     Then, when Bauer and other CCOs pushed back on this overreach, McDonald and Ptashkin intimidated, harassed, and discredited Bauer's professional competence, and legal advice to other CCOs.  This included:

        a.     Making malicious and false accusations and innuendos to Prosecutor Marshall and other County employees that Bauer had improperly caused the installation of malicious or threatening software on assistant Veronica Dixon's computer to monitor or hack McDonald's and Connolly's County email accounts. This was first stated on or about May 26, 2021 in a BOCC executive session for which risk manager Christian Jostlein produced a first-hand witness declaration. Commissioners McDonald and Connelly both stated that: 1) Bauer had instructed Marcus Robbins to install hacking software on Veronica Dixon's computer at a fundraising event in September of 2021; 2) Clerk Michael Rosedale provided a written statement that detailed a conversation between himself and Commissioner McDonald in early December of 2021 in which Commissioner McDonald told Mr. Rosedale that "Scott [Bauer] ha[d] installed software that spies on other's

computers, including keystrokes; and 3) Human Resource Director Cindy Binkerd confirmed with Deputy Prosecutor Bill Wilson that sometime in 2021 Commissioner McDonald had made similar allegations to Bill Wilson about Bauer.

        b.      Interfering with Bauer's legal review of IT matters by obstructing him from gaining proper access to software demonstrations, data visualization consuls, and approved training to aid him in providing legal advice regarding cloud storage and related software contracts with the County; and

        c.      Rushing consideration of IT related contracts so that Bauer could not provide a proper legal review and thereby evading his prior approval before the contracts were approved.

39.     Some CCOs objected to Defendant Ptashkin's plans for handling the data that they were Constitutionally mandated to handle. Bauer wrote to McDonald in December 2021, that consistent with the provision of the approved CIO job description, Ptashkin could not put the official data of other elected officials and their agencies into a cloud storage framework without first securing approval from each of the elected officials legally responsible for and controlling the data—which some CCOs refused to approve.

40.     Within days thereafter, the BOCC amended the CIO job description eliminating any express delineation of the elected official's data custody rights, in contravention of Bauer's legal advice that it would be in violation of applicable law and in direct conflict with the legal rights and duties of the other CCOs Bauer represented.

41.     Beginning in May 2021 and at various times thereafter, Defendant Ptashkin made numerous statements to McDonald, Connelly, and others expressing or implying that the Plaintiff:

        a.      had asked him to install a computer software program on a County

computer capable of accessing, interrogating, exploiting, or hacking data and information on or otherwise accessible through the computer data storage of other Bonner County officers or employees (herein "hacking software"), which request Ptashkin says he declined.

b.     had caused the installation of such hacking software on computers of Bonner County officers or employees through others, including in particular Sgt. Marcus Robbins with the Bonner County Sherriff's Office; and

c.     had the capability of utilizing the hacking software to access personal and private information on the computers of other Bonner County employees, in particular the emails of County Commissioners.

42.     Ptashkin made these and other similar and related statements about Bauer knowing they were false or with reckless disregard for their truth.  He also culpably failed to timely retract, correct, clarify, or repudiate these statements when made by Commissioners.

43.     Relying upon and accepting the defamatory representations and implications by Ptashkin, McDonald adopted the representations as true. McDonald (and discovery will reveal whether Ptashkin) repeated and conveyed like representations and false accusations against Bauer to other Bonner County officers and employees, including but not limited to the Prosecuting Attorney, Marshall, Deputy Prosecuting Attorney, William Wilson, and the Bonner County Clerk, Michael Rosedale, and possibly with members of the public external to County government.

44.     Discovery will reveal whether these officials shared McDonald's and Ptashkin's defamatory and retaliatory accusations with other Bonner County employees harming Bauer's professional reputation, interfering and harming Bauer's current and

future practice of his profession within County government and beyond.

45. On January 3, 2022, at the insistence of the BOCC, Bauer was removed as legal counsel to the BOCC and to all the Commission-controlled departments in Bonner County. Bauer had represented the Commission and its departments for over 13 years, from November 1, 2007, through January 3, 2021.

46. The employment decision to dismiss Bauer from representing BOCC was made public by Bauer's manifest absence at public BOCC meetings and through dissemination to BOCC mid-level department managers.

47. Since orchestrating Bauer's demotion and removal as legal counsel to the BOCC, McDonald has engaged in a course of conduct to further interfere with and impair Bauer's employment with the Prosecutor's Office, including but not limited to the following:

a. McDonald has stated or implied to individuals within and outside Bonner County that the County's removal of Plaintiff was due to incompetence.

b. In July 2022, McDonald interfered with Bauer's service as legal counsel to the Bonner County Fair Board and its Director, contradicting correct legal advice Bauer had given to the Fair Board and interfered with Bauer's independent legal service to the Fair Board and its Directors.

c. On August 17, 2022, McDonald instructed various County department heads – and through them roughly 75-100 County employees – "not (to) include or engage with Mr. Bauer on any business." "If he contacts you, do not respond but instead, send or notify our office of any communication or request from Mr. Bauer." McDonald also directed them to seek assistance from another Deputy County Attorney "to assist you with any legal advice you may need."

48.     On December 28, 2021, Plaintiff duly filed a Notice of Tort Claim (herein "Tort Claim") with the Clerk of Bonner County.

49.     Plaintiff's Tort Claim contained information on matters of public concern, of legitimate news interest, relevant to the public's evaluation of the performance of governmental agencies, elected officials and employees, and exposing actual and potential governmental wrongdoing and breaches of public trust affecting County officers, employees, and the citizens of Bonner County, including the following topics:

a.      the authority of all elected County Constitutional Officers (CCOs) to manage and control the confidentiality of the records and data of their offices

b.      unlawful interference with and violation of the legal custodial rights, duties and responsibilities of CCOs to secure and protect the private information of County citizens in their custody;

c.      job restrictions, legal review, and checks and balances on the activities and authorities of the CIO compatible with the legal rights and duties of all County CCOs;

d.      potential violations of law committed by Defendants regarding the custodial rights and duties of elected CCOs to control who secures, accesses, edits, and releases their data;

e.      alleged hacking of County computers and accounts utilizing the computers of other employees by the Chief Civil County Attorney, Bauer; and

f.      Chief Civil County Attorney Bauer's ability, responsibility, and competence to provide legal advice to the BOCC and other CCOs.

50.     In response to a tort claim notice filed by Bauer about the misconduct of Defendant McDonald and other Defendants, McDonald posted on a Facebook page of a

group known as *American Redoubt* the following: "This is what happens when you try to drain the swamp, aka Good Old Boys network here in Bonner County. They fabricate accusations based on hearsay. The swamp or good old boys' network, doesn't work for people of the County but rather only looks to feather their own bed via taxpayer dollars."

51.     Within days of filing Plaintiff's Tort Claim, the matters of public concern addressed in his Tort Claim became the subject of public news.

52.     This included social media postings on December 30, 2021, with a news source known as *Redoubt News*, which republished the accusations that:

   a.     the IT Deputy at the Sheriff's Office installed a malicious software application on a paralegal employee's computer; and

   b.     Bauer used that computer to hack the computers and email accounts of County Commissioners.

53.     As part of various emails to members of the public and a public dialogue on the Facebook page of the Rosebud Public Group regarding an ice rink contract at the County Fairgrounds, McDonald falsely accused Bauer of making errors and mistakes regarding the contract, of failing to include things that were negotiated and Bauer should have caught, and implying that Bauer had been replaced as the County's attorney because of these alleged mistakes and deficiencies.

54.     McDonald tried to block the Human Resources Department and Prosecutors office from conducting an internal personnel investigation into complaints of financial impropriety, waste, and other irregularities against Fair Board Director Darcey Smith by orchestrating and contributing to Smith filing a spurious and false grievance against Bauer and the County Director of Human Resources. McDonald's interference ultimately forced the Prosecutor to convert the issue into a criminal matter, referring it to

the Sandpoint City Police Department.

55. On October 31, 2022, County Fairgrounds Director Darcey Smith took her own life at the Bonner County Fairgrounds.

56. On or about November 2022, it is believed that McDonald stated or implied to various persons that Bauer bullied Darcey Smith into committing suicide.

57. On or about November 15, 2022, McDonald publicly accused Bauer of bullying Darcey Smith into committing suicide. McDonald did this with malice and defamatory intent knowing the statements to be false. McDonald did this to publicly humiliate Bauer in retaliation for Bauer filing his grievances, tort claim, and the instant action.

58. McDonald has continued to retaliate and mistreat Bauer, interfering with his performance of his duties and maligning him, including:

    a. refusing to participate in meetings with County Constitutional Officers who Bauer advises and represents, if Bauer is present and publicly mocking the collective action of the County Constitutional Officers as organized by Bauer in retaliation against Bauer for filing his grievances, tort claim, and the instant action;

    b. retaliatorily telling news reporters that Bauer improperly spent County funds, and for retaliatory reasons actively encouraging the publication of news articles impugning Bauer for alleged misspending; and

    c. interfering with Bauer's assigned duties and responsibilities as legal advisor to the Bonner County Fair Board and its Director, intentionally subverting his legal advice and ultimately preventing Bauer from having any contact with the Board and its employees.

59. On May 12, 2023, during mediation, Defendants provided to Bauer copies of six emails in which he had sought advice about preserving evidence of potential violations of law, and asserted that unless Bauer agreed to dismiss this lawsuit for nothing or leave his job for a settlement amount of their choosing they intend to call two well-recognized Idaho jurists to testify in open court that by sending the emails Plaintiff had violated the rules of professional conduct. Mr. Bauer did not violate the rules of professional conduct, and Defendants' threat was made in retaliation for Bauer's protected activity.

60. In further retaliation against Bauer, in May 2023, Defendants asked Bauer's supervisor to terminate his employment for sending these emails.

## VI. INCORPORATION

61. Plaintiff hereby alleges and incorporates all of the foregoing allegations and averments in each cause of action stated herein.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(*Deprivation of Plaintiff's Due Process Liberty Interest in Violation of the Constitution pursuant to 42 U.S.C. 1983 against Individual Defendants and against Bonner County and its Commissioners under Monell*)

62. Bauer has a liberty interest in his good name, reputation, and in continued and future employment.

63. Defendants infringed upon Bauer's liberty interest by impugning his good name, honor, and integrity.

64. Bauer requested a name clearing hearing on January 2, 2022, which County Policy required be completed within 10 days. Although Bauer timely and properly

requested a name clearing hearing, Defendants never provided Bauer any hearing or meaningful opportunity to be heard, never expunged the false accusations made against him, and never remedied the damage done to his good name.

65. After Bauer requested a name clearing hearing, McDonald continued his name smearing campaign against Bauer to the public and within the Bonner County organization.

66. As a result of Defendants' wrongful conduct, Bauer's professional reputation has been adversely impacted and it has foreclosed other employment and practice opportunities.

67. Defendants acted deliberately in violating Bauer's rights under the Fourteenth Amendment to the U.S. Constitution.

68. Defendants' conduct violated the clearly established constitutional right to due process.

69. Individual Defendants' conduct was willful and intentional, malicious, and exhibits reckless or callous indifference to Bauer's constitutional rights, thereby entitling him to punitive damages.

SECOND CAUSE OF ACTION

*(Violations of Idaho Protection of Public Employees Act by All Defendants)*

70. Bauer's legal advice and other communications were protected activity within the purview and protection of the Idaho Protection of Public Employees Act, Idaho Code § 6-2101 *et seq*., consistent with and in furtherance of public policies of the State of Idaho, including the Idaho Code of Professional Responsibilities, and his duties and required obligations as a licensed Idaho attorney and as the Chief Civil Deputy of Bonner County.

71.     The advice and other communications were in the interest of avoiding waste of public funds and personnel, avoiding, or responding to violations or potential, suspected, and anticipated violations of law, and in compliance with public policies of Idaho.

72.     Bauer's advice and other communications were made in good faith with a reasonable basis in fact, in law and in Bauer's professional judgment as the Defendants' attorney.

73.     In response, Defendants took adverse actions against Plaintiff within the scope and meaning of Idaho Code, § 6-2103(1) and in retaliation for his following and complying with his public policy duties and obligations.

74.     As a proximate cause of such adverse actions, Plaintiff has suffered and sustained damage and loss for which he is entitled to remedy and recovery.

THIRD AND FOURTH CAUSES OF ACTION

(*Express and Implied Defamation and False Light Privacy Violation by Ptashkin*)

75.     Defendant Ptashkin's false statements imputed to Bauer conduct that would amount to a criminal offense and would be incompatible with the proper conduct of Bauer's position and profession and placed him in a false light.

76.     To the extent Ptashkin's accusations against Bauer included some facts that may be interpreted as true, nonetheless the juxtaposition and context of Ptashkin's representation taken as a whole, coupled with the omission of other pertinent facts, conveyed a false defamatory impression and placed Bauer in a false light, both of which Ptashkin intended and endorsed.

77.     As a proximate cause of Ptashkin's misconduct, Bauer was subjected to ridicule and scorn, injury to his good name and professional standing, loss of public

confidence, and other damages.

## FIFTH CAUSE OF ACTION

(*Express and Implied Defamation and False Light Privacy Violations by McDonald*)

78.     All of the defamatory statements made by McDonald, expressly and implicitly impugning and accusing Bauer and referenced herein, and that placed him in a false light were knowingly false or made with reckless disregard of their truth or falsity.

79.     Such statements purposefully denigrated Bauer's integrity and competence and falsely accused him of conduct incompatible with the proper conduct of Bauer's position and profession.

80.     To the extent McDonald's accusations against Bauer included facts that may be interpreted as true, nonetheless the juxtaposition and context of McDonald's representations taken as a whole and coupled with the omission of other pertinent facts, conveyed a false, defamatory impression and placed Bauer in a false light, both of which McDonald intended and endorsed.

81.     As a proximate cause of McDonald's conduct, Bauer was subjected to ridicule and scorn, injury to his good name and professional standing, loss of public confidence, and other damages.

## SIXTH CAUSE OF ACTION

(*Deprivation of Plaintiff's First Amendment Rights Pursuant to 42 U.S.C. § 1983 by Individual Defendants and by Bonner County under Monell*)

82.     In response to the Tort Claim, the Chair of the BOCC (Dan McDonald) published a post on *Redoubt News* defaming Bauer and threatening his employment.

83.     Motivated further by Plaintiff's Tort Claim, on January 3, 2022, the BOCC intentionally interfered with Bauer's employment by the County Prosecutor, forcing his

removal as legal counsel to the BOCC and all Commission controlled departments in Bonner County.

84. Additionally, all of the other adverse actions against Bauer outlined in this Complaint occurring after Bauer filed his Tort Claim, Grievances, and this lawsuit were motivated by or substantially undertaken in response to Plaintiff's protected speech and petitioning activity.

85. Defendants' actions were in deliberate indifference to Plaintiff's First Amendment rights, committed under color of state law and deprived Plaintiff of his Constitutional rights.

86. The conduct violated clearly established constitutional rights of free speech and petition.

87. Plaintiff has suffered damage, injury, and loss proximately caused by Defendants' violative conduct and is entitled to all relief available pursuant to 42 U.S.C Sections 1983 and 1988.

88. The individual Defendants' conduct was willful, intentional, malicious and exhibits reckless or callous indifference to Bauer's constitutional rights, thereby entitling him to punitive damages against them.

## VIII. RESERVED RIGHT TO AMEND

89. Plaintiff reserves his right to amend this Complaint based upon transactions, occurrences, and events arising hereafter, as well facts and information disclosed or developed in the course of discovery.

90. To the extent required by Idaho Code, Section 6-1604 or any other provisions of federal or state law, Plaintiff further reserves his right to amend this Complaint to add a request for punitive, exemplary or liquidated damages.

## IX. DECLARATORY AND EQUITABLE RELIEF

91.     The facts and circumstances giving rise to this action, and the conduct which is threatened to occur in the future justifies this Court granting appropriate equitable relief, as allowed by law.

92.     In certain respects, Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, particularly the damage done to his career, and this action, insofar as it seeks declaratory and injunctive relief, is the only means of securing full and adequate relief.

## X. ATTORNEY FEES AND COSTS

93.     As a consequence of the complaints, causes, and claims stated herein, and in any further amendment to this Complaint, Plaintiff has been required to retain the law firm of Mauk Miller & Hawkins and then MacDonald Hoague & Bayless and has incurred and will incur costs and reasonable attorney fees related thereto, for which he is entitled to a separate award of reimbursement pursuant to various provisions of the laws of the United States and the State of Idaho affording such awards, including without limitation the following:

a.     Idaho Code, Section 6-918A

b.     Idaho Code, Section 6-2106

c.     Idaho Code, Section 12-120

d.     Idaho Code, Section 12-123

e.     42 U.S.C. Section 1988(b) and

f.     Rule 54(d) of the Federal Rules of Civil Procedure.

# REQUEST FOR RELIEF

WHEREFORE, Plaintiff asks for judgment against Defendants awarding the following relief:

A.      For reinstatement to his former position of employment with the full stature and responsibilities of that position or to a position comparable in stature, status, salary, benefits, advancement opportunities and other incidents of employment;

B.      For all his actual economic losses and damages, past and future, direct, incidental and consequential, including but not limited to back pay, front pay, past and future income loss and benefit loss;

C.      For general and compensatory losses and damage in an amount to be proved at trial;

D.      For injunctive and declaratory relief and for additional equitable relief, including ordering the Defendant to take affirmative action, as this Court deems appropriate based upon the proof at trial or at a proper post-judgment hearing regarding such relief;

E.      For punitive damages as allowed;

F.      For pre-judgment and post-judgment interest;

G.      For an award of all costs and reasonable attorney fees incurred in the prosecution of this action and in all preliminary and administrative proceedings related thereto;

H.      To conform the pleadings to the proof at trial; and

I.      For such other and further relief as this Court deems just and equitable in the premises.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial by a jury of twelve persons on all counts, claims and causes of action triable by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this _23rd__ day of _August___, 2023.


OWENS, McCREA & LINSCOTT, PLLC          MacDONALD HOAGUE & BAYLESS


_/s/ April M. Linscott_
April M. Linscott

_____/s/ Jesse Wing_____
Jesse Wing

_____/s/ Joe Shaeffer_____
Joe Shaeffer

_____/s/ Anika Ades_____
Anika Ades


*Attorneys for Plaintiff*                         *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _23rd_ day of August, 2023, I served true and correct copies of the foregoing document by delivering the same to the following persons, by the method indicated below:

Samuel T. Creason
Brook L. Jacobs
Creason, Moore, Dokken & Geidl, PLLC
1219 Idaho Street
P.O. Drawer 835
Lewiston, ID 83501
P: (208) 743-1516
F: (208) 746-2231
E: samc@cmd-law.com
   brookj@cmd-law.com
*Attorneys for Defendants Bonner County,*
*Idaho, Dan McDonald, and Brad Ptashkin*

☐ U.S. Mail, postage prepaid
☐ Hand-Delivered
☐ Facsimile
☐ E-mail
☒ ECF/E-File system

Kirtlan G. Naylor
Tyler D. Williams
Naylor & Hales, P.C.
950 W. Bannock Street, Ste. 610
Boise, ID 83702
P: (208) 383-9511
F: (208) 383-9516
E: kirt@naylorhales.com
   tdw@naylorhales.com
*Attorneys for Defendants Bonner County*
*and Bonner County Officials*

☐ U.S. Mail, postage prepaid
☐ Hand-Delivered
☐ Facsimile
☐ E-mail
☒ ECF/E-File system

_____/s/ Lucas Wildner_____
Lucas Wildner