Jesse Wing (admitted *pro hac vice*)
Joe Shaeffer (admitted *pro hac vice*)
Anika Ades (admitted *pro hac vice*)
MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, WA 98104
Tel: (206) 622-1604   Fax: (206) 343-3961
E-mail: jessew@mhb.com; joe@mhb.com; anikaa@mhb.com

April M. Linscott, ISB #7036
OWENS, MCCREA & LINSCOTT, PLLC
6500 N. Mineral Dr. Ste. 103
Coeur d'Alene, ID 83815
Telephone: (208) 762-0203
Email:  alinscott@omllaw.com

*Attorneys for Plaintiff*

## IN THE DISTRICT COURT OF THE UNITED STATES

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **D. Scott Bauer**, <br><br> Plaintiff, <br><br> vs. <br><br> **Bonner County, Idaho**,  **Dan McDonald,** in his individual capacity, **Brad Ptashkin,** in his individual capacity, Mike Rosedale, in his individual capacity, and Luke Omodt, in his individual capacity, <br><br> Defendants. | Case No.: 2:22-CV-00270-AKB <br><br> **SECOND SUPPLEMENTAL AND FIFTH AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> Judge:  Amanda K. Brailsford |

## NATURE OF THE CLAIMS

1.     Plaintiff alleges that his employer and several of its managing officials

retaliated against him for exercising his First Amendment-protected rights to pursue legal

claims and for his whistleblowing, defamed him, and harmed his professional reputation and standing as a lawyer without affording him Constitutionally mandated due process.

## II. PARTIES

2.      Plaintiff, D. Scott Bauer ("Bauer") is, and at all times pertinent hereto was a resident of Bonner County, Idaho and employed as a deputy attorney for the Bonner County Prosecutor's Office.

3.      Defendant, Bonner County, is, and at all times pertinent hereto was a political and corporate subdivision of the State of Idaho, consistent with Idaho Code, Section 31-601, with its principal offices in Sandpoint, Idaho, and an "employer" and a "public body" within the meaning of Idaho Code, Sections 6-2103 (4) and (5).

4.      Defendant Dan McDonald ("McDonald") was at times pertinent the Chair of Board of County Commissioners of Bonner County ("BOCC"), and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103 (4)(b).

5.      Defendant Brad Ptashkin ("Ptashkin") was at all times pertinent the Chief Information Officer ("CIO") for the BOCC and its departments and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103 (4)(b).

6.      Defendant Michael Rosedale ("Rosedale") was at all times pertinent the Bonner County Clerk and ex-officio county Auditor and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103(4)(b).

7.      Defendant Luke Omodt ("Omodt") was at all times pertinent a commissioner on the BOCC, and an agent of Bonner County within the meaning of Idaho Code, Section 6-2103 (4)(b).

8.      The individuals named herein, including but not limited to McDonald, Ptashkin, Rosedale, and Omodt committed the acts herein described within the scope of

their employment or agency for Bonner County, under color of law. The Individual Defendants had final policy making authority as it pertained to the BOCC and the departments they oversaw, and exercised that authority directly causing harm to Plaintiff or setting in motion the actions that caused him harm.

### III. JURISDICTION AND VENUE

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a)(3) with respect to Plaintiff's claims arising under federal law.

10. This Court further has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 (a).

11. Venue is proper with this Court under 28 U.S.C. § 1391 as the Defendant Bonner County is an Idaho political subdivision, the individual Defendants reside and work in Idaho, and the wrongful conduct alleged herein occurred within the jurisdiction of this Court.

12. Plaintiff's federal and state causes of action arise out of a common nucleus of related and operative facts.

### IV. EXHAUSTION

13. Plaintiff has exhausted all administrative remedies and conditions precedent, if any, required by law.

14. In particular, but without limitation,

    a. On December 28, 2021, Plaintiff filed a grievance and harassment complaint (herein "Grievance");

    b. On January 2, 2022, Plaintiff filed an amended grievance and harassment complaint ("Second Grievance") with Bonner County;

c.      On December 28, 2021, Plaintiff filed a complaint and request for name-clearing ("Name-Clearing Request") with Bonner County.

d.      On January 2, 2022, Plaintiff filed an Amended Name-Clearing Request with Bonner County.

e.      On October 30, 2023, Plaintiff submitted a whistleblower and harassment complaint with a request for a name clearing hearing relating to a defamatory email sent by Rosedale on October 26, 2023.

f.      On October 30, 2023, Plaintiff filed a notice of Tort Claim alleging malicious defamation and false-light invasion of privacy by Rosedale and others.

g.      On February 15, 2024, Plaintiff filed a notice of Tort Claim alleging malicious defamation and false-light invasion of privacy by Rosedale, Omodt and others.

15.      In response to Plaintiff's Grievance and Second Grievance, the Director of Human Resources of Bonner County hired an independent law firm to thoroughly investigate Plaintiff's complaints.

16.      The County Commissioners—namely, Defendants McDonald, and the CIO, Defendant Ptashkin, refused to cooperate with the investigation.

17.      Instead, these Defendants instructed other County employees not to cooperate with the investigators, did not allow and purposefully blocked the investigator's access to documents, records, and emails, denied them access to the County's computer systems, and confused and frustrated the investigation at multiple points.

18.      On or about May 11, 2022, the investigators issued their findings and report to the Director of Human Resources.  Among other things, the report concluded that:

a.      The Commissioners and the BOCC retaliated against the Plaintiff because Bauer told them their planned actions would violate the law, by removing Bauer

as their legal advisor, substantially interfering with his job; and

> b.    The advice Plaintiff provided to the Commissioners was legally correct.

19.    In addition, the investigators found that:

> a.    Commissioner McDonald, in multiple emails, publicly attacked Bauer's competence and erroneously blamed him for concerns raised by a citizen complaint.

> b.    Commissioners McDonald and Connolly and CIO Ptashkin accused Bauer of illegal and unethical behavior and Commissioner McDonald publicly published information to harm Bauer's reputation for truthfulness.

20.    The investigators found their accusations against Bauer unsupported. They concluded that:

> a.    Commissioner McDonald harassed Bauer in violation of Bonner County's harassment policy; and

> b.    Commissioners McDonald and Connolly and CIO Ptashkin spread malicious rumors about Bauer in violation of County policy.

21.    On November 16, 2022, Bauer filed a third grievance and harassment complaint ("Third Grievance") with Bonner County in compliance and conformance with the Bonner County Policy Manual (BCPM) alleging that McDonald, in retaliation for Bauer filing this lawsuit and related grievances and tort claims, and additionally published retaliatory and defamatory statements on Facebook and in other venues falsely and maliciously alleging Bauer bullied former Fair Manager Darcey Smith into suicide. Bauer's grievance also stated that McDonald harassed and retaliated against Bauer by forcing Bauer's removal as Fair Board legal advisor in retaliation for Bauer providing

re066702

accurate legal advice to the Fair Board and in retaliation for Bauer filing the instant lawsuit and in an effort to cover-up potential misconduct at the Fairgrounds.

22.    In response to Plaintiff's Third Grievance, Prosecutor Louis Marshall requested an outside investigation that concluded that Commissioner McDonald's conduct may have amounted to several violations of the Bonner County policy manual against Bauer and amounted to general harassment against Bauer.

23.    Despite the Plaintiff's repeated Name-Clearing Requests, and the findings and conclusions of its internal investigation, Bonner County has not abided by its BCPM Policies, has evaded providing Plaintiff with a procedurally adequate and effective process to clear his good name from the false and stigmatizing accusations of the Defendants, and has taken no action whatsoever, internal or external to the County government, that is in any way remedial to the damage wrongfully caused to his professional stature, reputation, honor, and integrity.

24.    On May 18, 2023, Bauer filed a fourth retaliation grievance ("Fourth Grievance") with Bonner County in compliance and conformance with the BCPM.

25.    On May 24, 2023, Plaintiff submitted to the County a written request for a name clearing hearing regarding his Fourth Grievance, and the following day, he submitted a supplement to his Grievance.

26.    On June 6, 2023, the County declined to investigate Plaintiff's Fourth Grievance on the grounds that "is not practical nor likely to lead to any additional information."

25. On November 6, 2023, elected Bonner County Prosecutor Louis Marshall conducted a name-clearing hearing regarding Rosedale's October 26, 2023 allegations that Bauer committed serious professional misconduct.  After conducting a hearing,

Marshall found that "there is certainly no evidence in the record nor am I aware of any evidence that shows those particular allegations to be true in any way."

## V. FACTS

27.   Plaintiff is an attorney licensed to practice law in the State of Idaho.

28.   As a licensed Idaho attorney, the legal advice, counsel, and representation Plaintiff provides to his legal clients and his other law-related conduct is subject to and governed in part by the Idaho Rules of Professional Conduct, which are public policies of the State of Idaho.

29.   Since November 1, 2007, Plaintiff has been employed as a lawyer by the Prosecuting Attorney's Office of Bonner County.

30.   Pursuant to Idaho Code, Section 31-2604 it is the duty of the Bonner County Prosecuting Attorney, as well as those attorneys employed and designated by him, such as Plaintiff,

> "To give advice to the board of county commissioners, and other public officers of the county, when requested in all public matters arising in the conduct of the public business entrusted to the care of such officers."

31.   Since 2020, Plaintiff has served as the Chief Civil Deputy Prosecutor of Bonner County, independently hired and exclusively supervised by Louis Marshall.

32.   As such, it has been Plaintiff's duty and responsibility to provide legal advice and counsel to the BOCC of Bonner County and the Commission's various offices, departments, and employees.  It has also been Plaintiff's duty and responsibility to provide legal advice to as the other Bonner County elected officials, such as the sheriff, prosecuting attorney, assessor, treasurer, auditor, recorder, and coroner of Bonner County, each of which are county constitutional officers ("CCO") pursuant to the Idaho

re066702

Constitution, Art. XVIII, § 6, with duties, authorities, powers, and responsibilities independent and separate from the BOCC of Bonner County and its Commissioners, and their offices, departments, and employees.

33. Until January 3, 2022, as the Chief Civil Deputy, the majority of Plaintiff's time and work activity has been devoted to advising and representing the BOCC and its Commissioners on matters arising in the scope and conduct of public business entrusted to them.

34. In recent years, the CCOs and their respective offices have given considerable focused discussion to the collection, storage, management, use, control, and privacy of documents, information, and data pertinent to their respective offices.

35. As a product of these discussions, the BOCC pursuant to Bauer's legal advice approved a new CIO Job Description and appointed its first CIO. This CIO job description explicitly recognized each CCO's data control rights.

36. Throughout 2020 and 2021, Plaintiff advised the Commissioners and other elected officials that according to Idaho law each elected CCO is the legal custodian of all information, documents, records, and datatypes relating to and within the scope of their official duties.

37. Plaintiff further advised the Commissioners specifically that it would be a violation of law for the Commissioners or their technologists to interfere with other elected officials control of the management and decision-making over their respective information technology and data.

38. Shortly thereafter, the Commissioners formally adopted a job description of a CIO, identifying the scope of the CIO's duties as limited to the BOCC, and appointed Defendant Ptashkin as their CIO.

SECOND SUPPLEMENT AND FIFTH AMENDED COMPLAINT - Page **8** of **34**

re066702

39.    Next, these Defendants embarked on a concerted effort to disregard the limitations set forth in the CIO job description, resist and evade Bauer's legal advice, and circumvent the legal duties owed to the other CCOs by taking actions to manage and control the storage and privacy of some of the other CCO's proprietary records and data without their informed consent.

40.    Then, when Bauer and other CCOs pushed back on this overreach, McDonald and Ptashkin intimidated, harassed, and discredited Bauer's professional competence, and legal advice to other CCOs.  This included:

a.    Making malicious and false accusations and innuendos to Prosecutor Marshall and other County employees that Bauer had improperly caused the installation of malicious or threatening software on assistant Veronica Dixon's computer to monitor or hack McDonald's and Connolly's County email accounts. This was first stated on or about May 26, 2021 in a BOCC executive session for which risk manager Christian Jostlein produced a first-hand witness declaration. Commissioners McDonald and Connelly both stated that: 1) Bauer had instructed Marcus Robbins to install hacking software on Veronica Dixon's computer at a fundraising event in September of 2021; 2) Clerk Michael Rosedale provided a written statement that detailed a conversation between himself and Commissioner McDonald in early December of 2021 in which Commissioner McDonald told Mr. Rosedale that "Scott [Bauer] ha[d] installed software that spies on other's computers, including keystrokes; and 3) Human Resource Director Cindy Binkerd confirmed with Deputy Prosecutor Bill Wilson that sometime in 2021 Commissioner McDonald had made similar allegations to Bill Wilson about Bauer.

b.    Interfering with Bauer's legal review of IT matters by obstructing him from gaining proper access to software demonstrations, data visualization consuls, and

approved training to aid him in providing legal advice regarding cloud storage and related software contracts with the County; and

      c.     Rushing consideration of IT related contracts so that Bauer could not provide a proper legal review and thereby evading his prior approval before the contracts were approved.

41.     Some CCOs objected to Defendant Ptashkin's plans for handling the data that they were Constitutionally mandated to handle.  Bauer wrote to McDonald in December 2021, that consistent with the provision of the approved CIO job description, Ptashkin could not put the official data of other elected officials and their agencies into a cloud storage framework without first securing approval from each of the elected officials legally responsible for and controlling the data—which some CCOs refused to approve.

42.     Within days thereafter, the BOCC amended the CIO job description eliminating any express delineation of the elected official's data custody rights, in contravention of Bauer's legal advice that it would be in violation of applicable law and in direct conflict with the legal rights and duties of the other CCOs Bauer represented.

43.     Beginning in May 2021 and at various times thereafter, Defendant Ptashkin made numerous statements to McDonald, Connelly, and others expressing or implying that the Plaintiff:

      a.     had asked him to install a computer software program on a County computer capable of accessing, interrogating, exploiting, or hacking data and information on or otherwise accessible through the computer data storage of other Bonner County officers or employees (herein "hacking software"), which request Ptashkin says he declined.

      b.     had caused the installation of such hacking software on computers of

Bonner County officers or employees through others, including in particular Sgt. Marcus Robbins with the Bonner County Sherriff's Office; and

       c.     had the capability of utilizing the hacking software to access personal and private information on the computers of other Bonner County employees, in particular the emails of County Commissioners.

     44.    Ptashkin made these and other similar and related statements about Bauer knowing they were false or with reckless disregard for their truth.  He also culpably failed to timely retract, correct, clarify, or repudiate these statements when made by Commissioners.

     45.    Relying upon and accepting the defamatory representations and implications by Ptashkin, McDonald adopted the representations as true. McDonald (and discovery will reveal whether Ptashkin) repeated and conveyed like representations and false accusations against Bauer to other Bonner County officers and employees, including but not limited to the Prosecuting Attorney, Marshall, Deputy Prosecuting Attorney, William Wilson, and the Bonner County Clerk, Michael Rosedale, and possibly with members of the public external to County government.

     46.    Discovery will reveal whether these officials shared McDonald's and Ptashkin's defamatory and retaliatory accusations with other Bonner County employees harming Bauer's professional reputation, interfering and harming Bauer's current and future practice of his profession within County government and beyond.

     47.    On January 3, 2022, at the insistence of the BOCC, Bauer was removed as legal counsel to the BOCC and to all the Commission-controlled departments in Bonner County.  Bauer had represented the Commission and its departments for over 13 years, from November 1, 2007, through January 3, 2021.

48.     The employment decision to dismiss Bauer from representing BOCC was made public by Bauer's manifest absence at public BOCC meetings and through dissemination to BOCC mid-level department managers.

49.     Since orchestrating Bauer's demotion and removal as legal counsel to the BOCC, McDonald has engaged in a course of conduct to further interfere with and impair Bauer's employment with the Prosecutor's Office, including but not limited to the following:

a.     McDonald has stated or implied to individuals within and outside Bonner County that the County's removal of Plaintiff was due to incompetence.

b.     In July 2022, McDonald interfered with Bauer's service as legal counsel to the Bonner County Fair Board and its Director, contradicting correct legal advice Bauer had given to the Fair Board and interfered with Bauer's independent legal service to the Fair Board and its Directors.

c.     On August 17, 2022, McDonald instructed various County department heads – and through them roughly 75-100 County employees – "not (to) include or engage with Mr. Bauer on any business." "If he contacts you, do not respond but instead, send or notify our office of any communication or request from Mr. Bauer." McDonald also directed them to seek assistance from another Deputy County Attorney "to assist you with any legal advice you may need."

50.     On December 28, 2021, Plaintiff duly filed a Notice of Tort Claim (herein "Tort Claim") with the Clerk of Bonner County.

51.     Plaintiff's Tort Claim contained information on matters of public concern, of legitimate news interest, relevant to the public's evaluation of the performance of governmental agencies, elected officials and employees, and exposing actual and potential

governmental wrongdoing and breaches of public trust affecting County officers, employees, and the citizens of Bonner County, including the following topics:

a.      the authority of all elected County Constitutional Officers (CCOs) to manage and control the confidentiality of the records and data of their offices.

b.      unlawful interference with and violation of the legal custodial rights, duties and responsibilities of CCOs to secure and protect the private information of County citizens in their custody;

c.      job restrictions, legal review, and checks and balances on the activities and authorities of the CIO compatible with the legal rights and duties of all County CCOs;

d.      potential violations of law committed by Defendants regarding the custodial rights and duties of elected CCOs to control who secures, accesses, edits, and releases their data;

e.      alleged hacking of County computers and accounts utilizing the computers of other employees by the Chief Civil County Attorney, Bauer; and

f.      Chief Civil County Attorney Bauer's ability, responsibility, and competence to provide legal advice to the BOCC and other CCOs.

52.    In response to a tort claim notice filed by Bauer about the misconduct of Defendant McDonald and other Defendants, McDonald posted on a Facebook page of a group known as *American Redoubt* the following: "This is what happens when you try to drain the swamp, aka Good Old Boys network here in Bonner County.  They fabricate accusations based on hearsay.  The swamp or good old boys' network, doesn't work for people of the County but rather only looks to feather their own bed via taxpayer dollars."

53.    Within days of filing Plaintiff's Tort Claim, the matters of public concern

addressed in his Tort Claim became the subject of public news.

54.     This included social media postings on December 30, 2021, with a news source known as *Redoubt News*, which republished the accusations that:

        a.      the IT Deputy at the Sheriff's Office installed a malicious software application on a paralegal employee's computer; and

        b.      Bauer used that computer to hack the computers and email accounts of County Commissioners.

55.     As part of various emails to members of the public and a public dialogue on the Facebook page of the Rosebud Public Group regarding an ice rink contract at the County Fairgrounds, McDonald falsely accused Bauer of making errors and mistakes regarding the contract, of failing to include things that were negotiated and Bauer should have caught, and implying that Bauer had been replaced as the County's attorney because of these alleged mistakes and deficiencies.

56.     McDonald tried to block the Human Resources Department and Prosecutors office from conducting an internal personnel investigation into complaints of financial impropriety, waste, and other irregularities against Fair Board Director Darcey Smith by orchestrating and contributing to Smith filing a spurious and false grievance against Bauer and the County Director of Human Resources. McDonald's interference ultimately forced the Prosecutor to convert the issue into a criminal matter, referring it to the Sandpoint City Police Department.

57.     On October 31, 2022, County Fairgrounds Director Darcey Smith took her own life at the Bonner County Fairgrounds.

58.     On or about November 2022, it is believed that McDonald stated or implied to various persons that Bauer bullied Darcey Smith into committing suicide.

59.    On or about November 15, 2022, McDonald publicly accused Bauer of bullying Darcey Smith into committing suicide. McDonald did this with malice and defamatory intent knowing the statements to be false. McDonald did this to publicly humiliate Bauer in retaliation for Bauer filing his grievances, tort claim, and the instant action.

60.    McDonald has continued to retaliate and mistreat Bauer, interfering with his performance of his duties and maligning him, including:

a.    refusing to participate in meetings with County Constitutional Officers who Bauer advises and represents, if Bauer is present and publicly mocking the collective action of the County Constitutional Officers as organized by Bauer in retaliation against Bauer for filing his grievances, tort claim, and the instant action;

b.    retaliatorily telling news reporters that Bauer improperly spent County funds, and for retaliatory reasons actively encouraging the publication of news articles impugning Bauer for alleged misspending; and

c.    interfering with Bauer's assigned duties and responsibilities as legal advisor to the Bonner County Fair Board and its Director, intentionally subverting his legal advice and ultimately preventing Bauer from having any contact with the Board and its employees.

61.    On May 12, 2023, during mediation, Defendants provided to Bauer copies of six emails in which he had sought advice about  preserving evidence of potential violations of law, and asserted that unless Bauer agreed to dismiss this lawsuit for nothing or leave his job for a settlement amount of their choosing they intend to call two well-recognized Idaho jurists to testify in open court that by sending the emails Plaintiff had

re066702

violated the rules of professional conduct.  Mr. Bauer did not violate the rules of professional conduct, and Defendants' threat was made in retaliation for Bauer's protected activity.

62.    In further retaliation against Bauer, in May 2023, Defendants asked Bauer's supervisor to terminate his employment for sending these emails.

63.    On March 29, 2023, Marshall directed Plaintiff to be the primary attorney representing the County Fair Board ("CFB") on all matters.

64.    During Plaintiff's representation of the CFB from March 3, 2023 through October 18, 2023, Plaintiff advised the BOCC that it was the CFB's position that it would be a violation of law for the BOCC to conduct CFB land-use planning without the consent of the CFB in relation to a proposed RV park land-use for the CFB.

65.    Through the same period, Bauer advised the CFB that the BOCC, external auditor, and internal auditor had and continued to violate the law through a failure to conduct a financial audit of the CFB, which directly facilitated significant Fairgrounds fraud in FY2022 in part to avoid detecting and reporting decisions by Defendant McDonald's to override fraud controls in FY2022.

66.    Commissioners Omodt and Bradshaw exerted pressure on the Plaintiff's supervisor, Marshall, in retaliation for the Plaintiff's engagement in protected activities, aimed at generating ethical conflict concerns, thereby forcing Marshall to involuntarily shift Bauer from his established role in civil law to a position in criminal law practice.

67.    In July 2023, the Bonner County Sheriff, with drafting and legal assistance from the Plaintiff, issued a public statement, disclosing that a fraud investigation, led by Prosecuting Attorney Louis Marshall, had uncovered that Darcy Smith, an employee of Bonner County, was involved in the embezzlement of significant county funds, some of

which took place during Fiscal Year 2022.

68. Subsequently, Defendant McDonald publicly attacked the Sheriff's statement and thereby Plaintiff, and falsely implied that Plaintiff had harassed Smith before she committed suicide. Likewise, Rosedale publicly attacked the Sheriff and thereby Plaintiff for suggesting that Rosedale, as Auditor, had failed to exercise appropriate oversight—a suggestion that Rosedale knew was true.

69.    On October 16, 2023, the Chairman of the County Fair Board issued a press release critical of Rosedale and the BOCC that was clearly based on Plaintiff's legal advice. Immediately, thereafter, Plaintiff was advised that BOCC Commissioner Luke Omodt and Rosedale began an audit of Plaintiff's expenditures.

70.    Two days later, on October 18, 2023, Marshall advised Bauer, "Yesterday the BOCC voted 2-1 to demand I reassign someone other than you to represent the Fair Board …. I appreciate the substantial time you have spent weeding through the intricacies of Idaho law and the authority and duties of the BOCC / County Auditor vis-à-vis the fair board and its employees. I also recognize the difficult place the fair board was left in and your efforts to help them get back on solid ground."

71. On Wednesday October 25, 2023, at 9:20 am, Commissioner Omodt sent an email to Bonner County Daily Bee reporter Soncirey Mitchell about Bauer's legal advice stating, "Good morning Soncirey, IC 22-202A is the applicable portion of Idaho code. I disagree in part with Commissioner Bradshaw. Bonner County was not using the wrong laws. Much of the advice given by legal counsel over the last two years has been completely reversed based upon the research conducted by two legal firms Malek and Smith; Witherspoon, Brajcich, and McPhee; and the accounting firm of Eide Bailey. I suggest requesting all correspondence between the BCSO and Tony Matson in a PRR for a better

understanding." Omodt knew or should have known that his statements criticizing Plaintiff's legal advice was false and materially misleading.

72. In an email to Prosecutor Louis Marshall and others sent on October, 26, 2023, Rosedale implied that Bauer was overseeing all legal components of the external audit of FY2022 and previously, and therefore that he was responsible for the County's failure to audit the CFB in FY2022 and earlier: "Louis, [...] Clearly this record request was generated by Scot Bauer, who currently serves as counsel to the Sheriff. Ironically, Scot was the counsel to the BOCC and to the Clerks going all the way back to 2007. He was the one advising the Board and the Clerk on all matters financial and budgetary. (I know I detrimentally relied on his advice during the 7+ years he advised me, and I assume the BOCC did as well). It seems to me that this is a legal question, as you (Louis) have said yourself. Therefore, the very lawyer who authored the request would be in the best position to respond to it. In fact, Scot Bauer was steering all the legal aspects of the audit, as that is a legal question, and he was involved with Hayden Ross long before I was elected. This decision would have been squarely Scot's. All involved would have relied upon his counsel. He should be the one this question is directed to. I know the Commissioners, Jessi and Nancy were included so I'll let them chime in as well. [...]"

73. On November 1, 2023, the morning after Plaintiff hand-delivered his tort claim to the County, Rosedale demanded additional documentation in support of Bauer's County expenses dating back to January of 2023, threatening that the office manager would have to pay $9,917.67 personally for said expenses if Rosedale did not receive the documentation.

74. On November 2, 2023, Rosedale accused Plaintiff of making false, derogatory statements about third parties that would entitle them to a name clearing

hearing. Rosedale knew or should have known that his statements were false and materially misleading.

75.  On November 5, 2023, Plaintiff submitted a public records request to Bonner County for documentation substantiating Rosedale's allegations. On November 8, 2023, the County responded stating, "We do not have responsive documents regarding your request," undermining Rosedale's accusations against Bauer.

76.  McDonald (who is now a former Commissioner) told members of the CFB that he controlled and could control Commissioner Omodt. The circumstances suggest that Rosedale, as County Auditor, coordinated with Omodt and McDonald to retaliate against Bauer both for providing legal advice regarding violations of law and for bringing tort claims and legal actions against Bonner County.

77.  On November 13, 2023, Rosedale sent an email to Bonner County Commissioner Asia Williams and County Comptroller Nancy Twineham stating, in reference to the prospect of an FY2023 Hayden-Ross audit that, "They are 99% not going to bid due to the unbelievable harassment they have received from certain elected officials and a deputy prosecutor in this county." Rosedale knew or should have known that his allegations against Bauer were false and materially misleading.

78. At the BOCC regular Tuesday public meeting on November 14, 2023, Rosedale and Omodt implied that Plaintiff defamed Rosedale, Twineham, and Hayden Ross auditor Tony Matson. Omodt stated that he will "not pretend when Clerk Rosedale's office has been defamed, the actions of some employees have been defamed." Omodt knew or should have known that his allegations against Bauer were false and materially misleading. At the same public meeting, Rosedale stated: "Mike Rosedale for the record. So, with the Audit Committee, there has been actual tremendous slander thrown against

our external auditor by an elected official and by a Bonner County employee. That is clear. [...] The one thing I have a hard time with is there has been an unbelievable slam against my office, against my comptroller, and against our external auditor and it's based on completely erroneous information, and Commissioner Williams knows this. [...] You have been staying silent this entire time letting the slander go on about our external audit, our internal audit, my entire office. You remain silent. Why, Commissioner Williams? [...] [A]ll I wanted to do is make sure that we don't have people in the County libeling our external auditor." Rosedale knew or should have known that his allegations against Bauer were false and materially misleading.

79. On November 16, 2023, during a special public meeting of the Board of County Commissioners, Comptroller Twineham, stated: "I'm Nancy Twineham. I'm the comptroller for Bonner County. I've been thinking here for quite some time about what I'm going to say and being on the receiving end for the last, since long before the sheriff posted his public statement. Okay, I am an employee of Bonner County and should be protected as an employee to hear somebody say, well I'm an elected official and I'm subject to this all the time. There needs to be protection for the employees. My name has been slandered; my name has been slandered on social media in the paper. Maybe not saying Nancy Twineham specifically, but I am the comptroller, so it's already assumed who's being out there. The likelihood of this tort continuing to be filed I would say is quite high against Mike."

80. On November 21, 2023, an article authored by Commissioner Omodt, identifying his role as such, was published in the *Sandpoint Reader*: "November surprise — Part 2 Non-existent records, false claims and other problems with Bonner County," stating: "On Aug. 4, 2023, Deputy Prosecutor Scot Bauer — Sheriff Wheeler's son-in-law

— in his capacity as legal representative of the Fair Board assigned by Prosecutor Louis Marshall, incorrectly stated the fairgrounds financial activity was included in the FY2022 audit of the county. These claims are simply not true, but there are other problems." Omodt knew or should have known that his statements were false and materially misleading.

81. On November 21, 2023, Ben Olson published an article in the *Sandpoint Reader*, titled "BOCC addresses numerous county issues at special meeting. November 21, 2023," stating, "Rosedale spoke at length during the meeting to address recent accusations against his office regarding potential fraud with the Bonner County Fair Board...." Olsen quoted Rosedale as saying in an email: "The accusations by Sheriff [Daryl] Wheeler and his son-in-law [Deputy Prosecutor] Scot Bauer against my office, my comptroller and Hayden Ross first revolved around a claim that there was failure to disclose any potential fraud at the fairgrounds.... I have been accused that my office wrongfully/negligently and perhaps with criminal intent told Hayden Ross to not audit the fairground activities." Olsen reported that, "Rosedale sent the Reader documents to back up his claim that the clerk's office was not responsible for auditing the Fair Board, referencing an email from Hayden Ross attorney Tony Matson, which instructed Rosedale, 'As we discussed today, the Bonner County Fairgrounds FY2022 financial information will not be included, and is not part of, the county's audit or audited financial statements.'" Rosedale knew or should have known that his statements to the Reader were false and materially misleading.

82. On or about December 12, 2023, the BOCC issued a statement to Hayden Ross: "Bonner County had no expectation that the independent audits contracted with Hayden Ross included the Bonner County Fairgrounds operations for FY2022 or previous years.

Bonner County's Audited Financial Statements have historically excluded the Bonner County Fairgrounds operations even prior to engaging Hayden Ross." Defendants knew or should have known that this statement was because the annual audit engagement contracts established the official expectations of Bonner County was for Hayden Ross to provide a full and complete statutory audit of the financial statements of Bonner County per I.C. 31-1701. The scope of the audit was to be of the financial statements of the entire GASB Statement 14 entity, which includes the County Fair Board. Note 1 to the FY2022 financial statements claimed that County management had performed a reasonably adequate potential component unit analysis whereas no such analysis had been conducted. BOCC's December 12, 2023 letter to Hayden Ross stated that Hayden Ross had complied with generally accepted governmental auditing standards," when it had not done so.

83. On or about December 21 or 22, 2023, McDonald posted a comment about Plaintiff's legal advice to the BOCC on *Facebook*: "As far as the legal advice on auditing the Fairgrounds, while I was a Commissioner there were two legal opinions provided by the Prosecutors office on the relationship between the County Commissioners and the fairboard focusing on the authority of the Commissioners over the fair board. The first was in 2017 that said the Commissioners are over Fairgrounds and ultimately the board however financially the Commissioners only have authority over the taxpayer funds provided for fair operations and had no authority or responsibility for funds created by the Fairgrounds for facilities rentals and events. That was the sole responsibility of the fairboard. The second opinion came from the same attorney at the Prosecutors office in 2022, claiming the Commissioners have no authority over the fairboard, the funds other than those provided by the County. Now there's a new third opinion? Three varying

opinions in just 7 years, all different. Somethings up here." McDonald knew or should have known that his statements were false and materially misleading.

84. On or about January 24th, 2024, Plaintiff raised concerns to the BOCC among others in Bonner County government that the County may be violating public records law by using software to process public records that routinely changes the data in responsive public records so it is inaccurate when produced to the public. In response to this and other of Plaintiff's protected activity, starting at least as early as January 2024, in concert with others, Defendant Omodt directed Plaintiff's legal assistant, Veronica Dixon, not to respond to Plaintiff and in other ways interfered with Plaintiff's ethical obligations to supervise her.

85. In January of 2024, after Plaintiff reported concerns that Bonner County Administration IT head Jacob Storms may have participated in violating public records laws, Mr. Storms started retaliating against Plaintiff. On January 24, 2024, Mr. Storms sent an email sent stating, "I will also be reviewing our access needs for our Google Workspace environment" and then unilaterally eliminated the ability of the County's law-side IT departments to allow Plaintiff access to County email in its Google Vault needed to perform his job and implying, falsely, that Plaintiff had sought access to Google Vault for improper purposes. Mr. Storm took action without first consulting the Prosecuting Attorney or Plaintiff about the purpose of Plaintiff's access and without communicating with the law-side IT department about the nature and extent of permission revocations causing an internal dispute among the departments in Bonner County.

86. From January through March of 2024, legal assistant Veronica Dixon was ignoring requests and instructions from Plaintiff, who as one of her supervisors was concerned that as a lawyer he had a professional duty to oversee her work. In response to

Plaintiff's objections to her behavior, Ms. Dixon refused to clarify who her direct report was, Ms. Dixon then presented Plaintiff with a fabricated job description. In response, Plaintiff reported to HR Director Alissa Clark, the BOCC, and Prosecutor Louis Marshall that Ms. Dixon had created a false public record in violation of Idaho law. County officials, including Mr. Omodt, nevertheless supported Ms. Dixon's false assertions.

87.  On or about February 13, 2024, Commissioner Omodt requested an audit of all of Plaintiff's work expenses, in retaliation for Plaintiff's protected activity.

88. Plaintiff conferred with Deputy Prosecutor Bill Wilson and Prosecuting Attorney Louis Marshall but they expressed uncertainty about Ms. Dixon's supervisory chain of command. In an effort to ensure compliance with the RPCs in supervising a subordinate, on March 1, 2024, Plaintiff initiated public records requests into who Ms. Dixon was reporting to in regards to public records matters and whether she had maintained adequate communication with her supervising attorneys about  topics of public concern: the nature and extent of external legal counsel's billing and performance from 2022 to 2023, current IT controversies of which Dixon likely had knowledge, and possible government waste.

89. Concurrently, Plaintiff filed a public records lawsuit to formally obtain Ms. Dixon's actual job description, an action that was reported in the morning newspaper that day.  That evening, the County notified Plaintiff that he was being placed on involuntary administrative leave, which is his current status.

90.  On March 20, 2024, an article titled "BOCC Meeting Raises Concerns Over County Cybersecurity" was published in the *Sandpoint Reader*. The article suggested falsely that Plaintiff had attempted to commit computer-related misconduct so may have been placed on administrative leave for that reason. Officials of the County provided this

harmful and false information to the *Reader* originating from Luke Omodt and other County personnel who sought to discredit Plaintiff for his protected activity. Defendants' communication of false and defamatory information about Plaintiff has occurred so frequently that the *Sandpoint Reader* has begun tagging it specifically, causing greater harm to Plaintiff.

91.   Defendants have collaboratively orchestrated their actions to caus significant reputational harm to Plaintiff, and place his job and bar license in jeopardy.

## VI. INCORPORATION

92.   Plaintiff hereby alleges and incorporates all of the foregoing allegations and averments in each cause of action stated herein.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(*Deprivation of Plaintiff's Due Process Liberty Interest in Violation of the Constitution pursuant to 42 U.S.C. 1983 against Individual Defendants and against Bonner County and its Commissioners under Monell*)

93.   Bauer has a liberty interest in his good name, reputation, and in continued and future employment.

94.   Defendants infringed upon Bauer's liberty interest by impugning his good name, honor, and integrity.

95.   Bauer requested a name clearing hearing on January 2, 2022, which County Policy required be completed within 10 days. Although Bauer timely and properly requested a name clearing hearing, Defendants never provided Bauer any hearing or meaningful opportunity to be heard, never expunged the false accusations made against him, and never remedied the damage done to his good name.

96.    After Bauer requested a name clearing hearing, McDonald continued his name smearing campaign against Bauer to the public and within the Bonner County organization.

97.    As a result of Defendants' wrongful conduct, Bauer's professional reputation has been adversely impacted and it has foreclosed other employment and practice opportunities.

98.    Defendants acted deliberately in violating Bauer's rights under the Fourteenth Amendment to the U.S. Constitution.

99.    Defendants' conduct violated the clearly established constitutional right to due process.

100.    Individual Defendants' conduct was willful and intentional, malicious, and exhibits reckless or callous indifference to Bauer's constitutional rights, thereby entitling him to punitive damages.

SECOND CAUSE OF ACTION

*(Violations of Idaho Protection of Public Employees Act by All Defendants)*

101.    Bauer's legal advice and other communications were protected activity within the purview and protection of the Idaho Protection of Public Employees Act, Idaho Code § 6-2101 *et seq*., consistent with and in furtherance of public policies of the State of Idaho, including the Idaho Code of Professional Responsibilities, and his duties and required obligations as a licensed Idaho attorney and as the Chief Civil Deputy of Bonner County.

102.    The advice and other communications were in the interest of avoiding waste of public funds and personnel, avoiding, or responding to violations or potential, suspected, and anticipated violations of law, and in compliance with public policies of

re066702

Idaho.

103.   Bauer's advice and other communications were made in good faith with a reasonable basis in fact, in law and in Bauer's professional judgment as the Defendants' attorney.

104.   In response, Defendants took adverse actions against Plaintiff within the scope and meaning of Idaho Code, § 6-2103(1) and in retaliation for his following and complying with his public policy duties and obligations.

105.   As a proximate result of such adverse actions, Plaintiff has suffered and sustained damage and loss for which he is entitled to remedy and recovery.

THIRD AND FOURTH CAUSES OF ACTION

(<em>Express and Implied Defamation and False Light Privacy Violation by Ptashkin</em>)

106.   Defendant Ptashkin's false statements imputed to Bauer conduct that would amount to a criminal offense and would be incompatible with the proper conduct of Bauer's position and profession and placed him in a false light.

107.   To the extent Ptashkin's accusations against Bauer included some facts that may be interpreted as true, nonetheless the juxtaposition and context of Ptashkin's representation taken as a whole, coupled with the omission of other pertinent facts, conveyed a false defamatory impression and placed Bauer in a false light, both of which Ptashkin intended and endorsed.

108.   As a proximate result of Ptashkin's misconduct, Bauer was subjected to ridicule and scorn, injury to his good name and professional standing, loss of public confidence, and other damages.

FIFTH CAUSE OF ACTION

(<em>Express and Implied Defamation and False Light Privacy Violations by McDonald</em>)

re066702

109.    All of the defamatory statements made by McDonald, expressly and implicitly impugning and accusing Bauer and referenced herein, and that placed him in a false light were knowingly false or made with reckless disregard of their truth or falsity.

110.    Such statements purposefully denigrated Bauer's integrity and competence and falsely accused him of conduct incompatible with the proper conduct of Bauer's position and profession.

111.    To the extent McDonald's accusations against Bauer included facts that may be interpreted as true, nonetheless the juxtaposition and context of McDonald's representations taken as a whole and coupled with the omission of other pertinent facts, conveyed a false, defamatory impression and placed Bauer in a false light, both of which McDonald intended and endorsed.

112.    As a proximate result of McDonald's conduct, Bauer was subjected to ridicule and scorn, injury to his good name and professional standing, loss of public confidence, and other damages.

SIXTH CAUSE OF ACTION

*(Deprivation of Plaintiff's First Amendment Rights Pursuant to 42 U.S.C. § 1983 by Individual Defendants and by Bonner County under Monell)*

113.    In response to the Tort Claim, now former Chair of the BOCC (Dan McDonald) published a post on *Redoubt News* defaming Bauer and threatening his employment.

114.    Motivated further by Plaintiff's Tort Claim, on January 3, 2022, the BOCC intentionally interfered with Bauer's employment by the County Prosecutor, forcing his removal as legal counsel to the BOCC and all Commission controlled departments in Bonner County.

115.     Additionally, all of the other adverse actions against Bauer outlined in this Complaint occurring after Bauer filed his Tort Claims, Grievances, and this lawsuit were motivated by or substantially undertaken in response to Plaintiff's protected speech and petitioning activity.

116. Defendants' actions were in deliberate indifference to Plaintiff's First Amendment rights, committed under color of state law and deprived Plaintiff of his Constitutional rights.

117.     The conduct violated clearly established constitutional rights of free speech and petition.

118.     Plaintiff has suffered damage, injury, and loss proximately caused by Defendants' violative conduct and is entitled to all relief available pursuant to 42 U.S.C Sections 1983 and 1988.

119.     The individual Defendants' conduct was willful, intentional, malicious and exhibits reckless or callous indifference to Bauer's constitutional rights, thereby entitling him to punitive damages against them.

SEVENTH CAUSE OF ACTION

(*Express and Implied Defamation and False Light Privacy Violations by Rosedale*)

120.     All of the defamatory statements made by Rosedale, expressly and implicitly impugning and accusing Plaintiff and referenced herein, and that portrayed him in a false light were knowingly false or made with reckless disregard of their truth or falsity.

121.     Such statements purposefully denigrated Plaintiff's integrity and competence and falsely accused him of conduct incompatible with the proper conduct of Plaintiff's position and profession.

122.     To the extent Rosedale's accusations against Plaintiff included facts that

may be interpreted as true, nonetheless the juxtaposition and context of Rosedale's representations taken as a whole and coupled with the omission of other pertinent facts, conveyed a false, defamatory impression and portrayed Plaintiff in a false light, both of which Rosedale intended and endorsed.

123.   As a proximate result of Rosedale's conduct, Plaintiff was subjected to ridicule and scorn, injury to his good name and professional standing, loss of public confidence, and other damages.

EIGHTH CAUSE OF ACTION

(<em>Express and Implied Defamation and False Light Privacy Violations by Omodt</em>)

124.   All of the defamatory statements made by Omodt, expressly and implicitly impugning and accusing Plaintiff and referenced herein, and that portrayed him in a false light were knowingly false or made with reckless disregard of their truth or falsity.

125.   Such statements purposefully denigrated Plaintiff's integrity and competence and falsely accused him of conduct incompatible with the proper conduct of Plaintiff's position and profession.

126.   To the extent Omodt's accusations against Plaintiff included facts that may be interpreted as true, nonetheless the juxtaposition and context of Omodt's representations taken as a whole and coupled with the omission of other pertinent facts, conveyed a false, defamatory impression and portrayed Plaintiff in a false light, both of which Omodt intended and endorsed.

127.   As a proximate result of Omodt's conduct, Plaintiff was subjected to ridicule and scorn, injury to his good name and professional standing, loss of public confidence, and other damages.

<strong>VIII. RESERVED RIGHT TO AMEND</strong>

128.    Plaintiff reserves his right to amend this Complaint based upon transactions, occurrences, and events arising hereafter, as well facts and information disclosed or developed in the course of discovery.

129.    To the extent required by Idaho Code, Section 6-1604 or any other provisions of federal or state law, Plaintiff further reserves his right to amend this Complaint to add a request for punitive, exemplary or liquidated damages.

## IX. DECLARATORY AND EQUITABLE RELIEF

130.    The facts and circumstances giving rise to this action, and the conduct which is threatened to occur in the future justifies this Court granting appropriate equitable relief, as allowed by law.

131.    In certain respects, Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, particularly the damage done to his career, and this action, insofar as it seeks declaratory and injunctive relief, is the only means of securing full and adequate relief.

## X. ATTORNEY FEES AND COSTS

132.    As a consequence of the complaints, causes, and claims stated herein, and in any further amendment to this Complaint, Plaintiff has been required to retain the law firm of Mauk Miller & Hawkins and then MacDonald Hoague & Bayless and has incurred and will incur costs and reasonable attorney fees related thereto, for which he is entitled to a separate award of reimbursement pursuant to various provisions of the laws of the United States and the State of Idaho affording such awards, including without limitation the following:

    a.    Idaho Code, Section 6-918A;

b.      Idaho Code, Section 6-2106;

c.      Idaho Code, Section 12-120;

d.      Idaho Code, Section 12-123; and

e.      42 U.S.C. Section 1988(b)

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff asks for judgment against Defendants awarding the following relief:

A.      For reinstatement to his former position of employment with the full stature and responsibilities of that position or to a position comparable in stature, status, salary, benefits, advancement opportunities and other incidents of employment;

B.      For all his actual economic losses and damages, past and future, direct, incidental and consequential, including but not limited to back pay, front pay, past and future income loss and benefit loss;

C.      For general and compensatory losses and damage in an amount to be proved at trial;

D.      For injunctive and declaratory relief and for additional equitable relief, including ordering the Defendant to take affirmative action, as this Court deems appropriate based upon the proof at trial or at a proper post-judgment hearing regarding such relief;

E.      For punitive damages as allowed;

F.      For pre-judgment and post-judgment interest;

G.      For an award of all costs and reasonable attorney fees incurred in the prosecution of this action and in all preliminary and administrative proceedings related thereto;

H.      To conform the pleadings to the proof at trial; and

I.      For such other and further relief as this Court deems just and equitable in the premises.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial by a jury of twelve persons on all counts, claims and causes of action triable by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this___ day of _May ____, 2024.


OWENS, McCREA & LINSCOTT, PLLC          MacDONALD HOAGUE & BAYLESS


_/s/ April M. Linscott_                          _/s/ Jesse Wing_
April M. Linscott                                Jesse Wing

                                                 _/s/ Joe Shaeffer_
                                                 Joe Shaeffer

                                                 _/s/ Anika Ades_
                                                 Anika Ades


*Attorneys for Plaintiff*                         *Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ____ day of May, 2024, I served true and correct copies of the foregoing document by delivering the same to the following persons, by the method indicated below:

Samuel T. Creason                    ☐   U.S. Mail, postage prepaid
Brook L. Jacobs

SECOND SUPPLEMENT AND FIFTH AMENDED COMPLAINT - Page **33** of **34**

Creason, Moore, Dokken & Geidl, PLLC
1219 Idaho Street
P.O. Drawer 835
Lewiston, ID 83501
P: (208) 743-1516
F: (208) 746-2231
E: samc@cmd-law.com
    brookj@cmd-law.com
*Attorneys for Defendants Bonner County,*
*Idaho, Dan McDonald, and Brad Ptashkin*

☐ Hand-Delivered
☐ Facsimile
☐ E-mail
☒  ECF/E-File system

Kirtlan G. Naylor
Tyler D. Williams
Naylor & Hales, P.C.
950 W. Bannock Street, Ste. 610
Boise, ID 83702
P: (208) 383-9511
F: (208) 383-9516
E: kirt@naylorhales.com
    tdw@naylorhales.com
*Attorneys for Defendants Bonner County*
*and Bonner County Officials*

☐ U.S. Mail, postage prepaid
☐ Hand-Delivered
☐ Facsimile
☐ E-mail
☒ ECF/E-File system

/s/ Lucas Wildner
Lucas Wildner

SECOND SUPPLEMENT AND FIFTH AMENDED COMPLAINT - Page **34** of **34**

re066702