JESSE WING, *pro hac vice*
JOSEPH R. SHAEFFER, *pro hac vice*
ANIKA R. ADES, *pro hac vice*
MacDONALD HOAGUE & BAYLESS
705 Second Ave, Suite 1500
Seattle, WA 98104
Phone: 206-622-1604
jessew@mhb.com
joe@mhb.com
anikaa@mhb.com

APRIL M. LINSCOTT, ISB #7036
CUSACK LAW FIRM
320 E. Neider Ave., Ste 206
Coeur d'Alene, Idaho 83815
Phone: 208-667-0640
april@mcusacklaw.com

*Attorneys for Plaintiff*

Hon. Amanda K. Brailsford

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

D. SCOTT BAUER,

Plaintiff,

v.

BONNER COUNTY, IDAHO; DAN McDONALD, in his individual capacity; and BRAD PTASHKIN, in his individual capacity, MIKE ROSEDALE, in his individual capacity, and LUKE OMODT, in his individual capacity,

Defendants.

No. 2:22-cv-00270-AKB

REPLY IN SUPPORT OF AMENDED MOTION FOR DETERMINATION OF DEFENDANTS' IMPLICIT OR IMPLIED WAIVER OF ATTORNEY-CLIENT PRIVILEGE, AND MOTION TO COMPEL DEPOSITION TESTIMONY AND ANY WITHHELD DOCUMENTS [Dkt. 126]

Plaintiff has asked that the Court: (1) determine that Defendants have implicitly or impliedly waived privilege over written and oral attorney-client communications at issue in this

case; and (2) compel Defendants to produce documents and order witnesses to answer the

deposition questions that they refused to answer, or their counsel instructed them not to answer.

Dkt. 126-1.

In their opposition, Defendants almost completely failed to address the first issue, thereby

conceding that they have impliedly or implicitly waived privilege over all attorney-client

communications placed at issue in this case. Although they attempt to justify witnesses' refusal

to answer questions at depositions, their arguments fail.

> **A.** **This Court's Determination of Defendants' Implied Wavier of Privilege is Necessary for Plaintiff to Adequately Defend His Case Because Defendants' Have Put These Communications at Issue.**

Faced with Plaintiff's multi-page argument combined with numerous examples of how

Defendants have placed attorney-client privileged communications at issue through their asserted

defenses, *see* Dkt. 126-1, at 2, 5, 8-15 (e.g., claiming that Plaintiff was incompetent, his legal

advice was wrong and imprudent, his legal advice, opinions, and conduct violated the Rules of

Professional Conduct, etc.), Defendants did not respond. They did not direct any portion of their

opposition towards countering the facts or examples that Plaintiff presents, towards

distinguishing the precedent on which Plaintiff relies, or towards rebutting Plaintiff's analysis.

Plaintiff has demonstrated his need for this evidence as well as for the related

communications and testimony of witnesses such as of his now-former supervisor, Elected

Prosecutor Louis Marshall, about his advice, the opinions of others about his advice, and the

advice of others on the same topics. As Plaintiff showed in his memorandum, precedent does not

allow Defendants to place privileged oral or written communications at issue and rely on them as

evidence in support of their own defenses, while preventing Plaintiff from discovering and

presenting the rest of such evidence and testimony in rebuttal, ensuring that he is able to obtain and present the full picture.

While Defendants generally contend that the relief Plaintiff seeks is "extreme and extraordinary," their conduct shows the opposite. They provide almost no response to his request for a determination that Defendants have implicitly or impliedly waived attorney-client privilege over communications at issue in this case. They address implied waiver only in the limited context of a single deposition question that then-Defense counsel instructed Defendant McDonald not to answer. *See* Dkt. 139, at 12. In contrast to Plaintiff's dedication of more than half his memorandum to requesting a determination that Defendants implicitly or impliedly waived their privilege, broadly, Defendants devote one paragraph to the entire topic.

Plaintiff's request is far from extraordinary. In anticipation of the Court's determination on this issue and to facilitate the collection of evidence, Defendants agreed to their clients and to other witnesses in multiple depositions answering hours and hours of questions over which they assert privilege in exchange for Plaintiff stipulating that he would not use what he learned without further stipulation or order of the order. He seeks such an order now, so that he can present the evidence he has secured, and obtain more, that is highly probative of Defendants' participation in and motives behind the actions that they have taken against Plaintiff, and of facts that tend to undermine Defendants' affirmative defenses.

**B.    For deposition testimony, Defendants either did not establish that the attorney-client privilege applies, or they have impliedly waived the privilege.**

As identified below, Defense counsel instructed several of its witnesses not to answer questions, or the witnesses themselves refused to answer, claiming attorney-client privilege. Although it is Defendants' burden to establish the "privileged nature of the communication,"

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (citation omitted), they have not done so.

As to other questions identified below, by asserting affirmative defenses, Defendants have placed otherwise privileged communications or opinions at issue, impliedly or implicitly waiving protection. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (A party "may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege."). By attacking Plaintiff's legal advice as wrong or imprudent, by claiming he did not give certain advice, and by claiming that he violated the Idaho Rules of Professional Conduct to justify their actions against him (including removal, reassignment, and placement on administrative leave), Defendants have placed communications and opinions about such matters at issue. As a result, they have impliedly or implicitly waived privilege over all related communications and opinions.

### C. This Court should order Louis Marshall to answer questions about his communications in his capacity as Plaintiff's supervisor.

Defendants contend that Louis Marshall already answered, "these questions," citing only to Marshall's answer on page 202.[1] But this is not the question at issue. Defense counsel instructed Marshall not to answer an earlier question about whether *anyone* encouraged or asked him to "take an employment decision of firing Mr. Bauer[.]" Dkt. 118-3, Ex. A, at 200:24 – 201:6. In their response, Defendants rely solely on the fact that Marshall is a lawyer to claim privilege. However, he was asked questions not in his capacity as a lawyer but instead as Plaintiff's supervisor. In that context, when Marshall makes decisions about whether to fire his employee, he is performing a "business-function," and does not function as a lawyer providing

---

[1] Dkt. 118-3, Ex. A.

legal advice. *Neuder v. Battelle Pac. Nw. Nat'l Lab*, 194 F.R.D. 289, 295 (D.D.C. 2000). The answer to Plaintiff's question is not protected by privilege, and Defendants have failed to show otherwise.

For pages 46-47 of Marshall's deposition,[2] Defendants' contentions about "focused" objections do not establish that the communications are protected by privilege. They have failed to demonstrate that any commissioner was seeking legal advice when assuring Louis Marshall's office that (then-Commissioner) Luke Omodt was not going to act on his threat to "cut the bolts off of a server room and go into the servers." Dkt. 118-3, Ex. A at 42:14-15. While the privilege may protect communications about facts, it does not protect the facts themselves. *Upjohn v. United States*, 449 U.S. 383, 395-96 (1981).

Finally, Defendants' argument that Marshall was justified in refusing to answer questions that "delve into litigation issues" is misplaced. Defendants have impliedly or implicitly waived the privilege concerning questions about Plaintiff's job status and about whether the Commissioners sought a reduction in force to remove Plaintiff from his job. *See* Dkt. 119 (Louis Marshall Rule 30(b)(6) Deposition filed under seal) at 58:8 – 62:21. Because these issues are inextricably tied to Plaintiff's claims and to Defendants' affirmative defenses in support of their actions against him (including that Defendants were justified in their employment decisions and treatment of Plaintiff, including terminating his employment), Defendants have impliedly or implicitly waived the privilege. *See Hearn v. Rhay*, 68, F.R.D. 574, 582 (E.D. Wash. 1975). The Court should order Marshall to answer these questions.

---

[2] Dkt. 118-3, Ex. A.

**D.    Defendant McDonald refused to answer questions about communications that were not requests for legal advice, were publicly disclosed, or over which Defendants have impliedly waived the privilege.**

*1.    McDonald's Facebook and email comments.*

It is irrelevant whether the email that McDonald sent to a third party alleging "bombshells" that would undermine Plaintiff's lawsuit was based upon communications with his counsel because the question asked what bombshells McDonald meant, not how he became aware of them or their significance. *See Upjohn*, 449 U.S. at 395-96. And Defendant's argument that implied waiver does not apply to this context—their only discussion of the topic in their brief—is likewise irrelevant since Plaintiff was not seeking to invade protected communications but was just asking what bombshells McDonald was thinking of when he wrote to the third party.

Likewise, Plaintiff does not contend implied waiver of the two Facebook messages that MacDonald sent to third parties. Rather, Plaintiff contends that McDonald explicitly blew the privilege by publicly disclosing his communications, thereby waiving any protection over them. *See* Dkt. 118-4, Ex. C at 237:8-9; 237:23-25. As a result, it was wrong for prior Defense counsel to instruct McDonald to not answer Plaintiff's questions about these statements (such as which attorney made them).

*2.    McDonald's discovery violation and preservation instruction.*

During his deposition, McDonald testified that he likely destroyed the notes he made concerning any inaccuracies in the report written by the County's investigator into Plaintiff's allegations. Dkt. 118-4, Ex. C, 232:12-13. Since this was a potential discovery violation, Plaintiff asked whether McDonald had received any instructions not to destroy documents, as required by the Court's Discovery Order. Plaintiff did not ask from whom McDonald had received such an instruction, or the content of any such instruction. His answer was therefore not protected by the attorney-client privilege and is necessary to assess any claim for spoliation.

      *3.    Dan McDonald's email about advice to "no longer engage" with Plaintiff.*

McDonald had written that he had been advised to "no longer engage" with Plaintiff but when asked, he was instructed not to answer whether it was the prosecuting attorney's office. Dkt. 118-4, Ex. C at 289:11-15. By refusing to identify who told this to McDonald, Defendants have failed to meet the foundation necessary to establish privilege: that it was a communication from a lawyer (and if so, who). Additionally, if it was Marshall who told McDonald to "no longer engage" with Plaintiff then Defendants must prove that Marshall made the statement as legal advice, not as Plaintiff's supervisor—which Defendants have failed to prove. Moreover, McDonald explicitly waived any protection by disclosing what he had been told, even if it was advice. Finally, by defending this lawsuit by claiming that McDonald was justified in refusing to interact with Plaintiff because he disagreed with Plaintiff's legal advice and believed he was not competent, Defendants implicitly or impliedly waived otherwise privileged information about the communication at issue.

Defendants' assertion that McDonald's answer to an earlier question made answering this question "unnecessary" is likewise wrong because they were different questions. And Defendants' assertion that McDonald had already answered the question undermines their claim that they have not waived the privilege.

**E.    Brad Ptashkin refused to answer a question about his own beliefs.**

The question asked of Ptashkin concerned his *own* beliefs, not what Marshall said to him, so no privilege attached. But even if the question had implicated Marshall's communication, Marshall was communicating in his "business-function" capacity as Plaintiff's supervisor, so the attorney-client privilege did not apply. *Neuder*, 194 F.R.D. at 295. Defendants have not established otherwise.

**F.    Defendant Steve Bradshaw's communications with Louis Marshall were not privileged.**

During his deposition, then-Commissioner Steve Bradshaw refused to answer questions about his beliefs, opinions, and intentions toward Plaintiff's employment as communicated to Plaintiff's supervisor, Louis Marshall. *See* Dkt. 126-1, at 6-7. But Defendants have failed to show that Bradshaw's communications were directed to Marshall for the purpose of seeking legal advice. They were not. Instead, they were directed to Marshall in his business-function capacity as Plaintiff's supervisor, so were not privileged. *See Neuder*, 194 F.R.D. at 295. That Bradshaw made his statements about taking an adverse employment action against Plaintiff in an executive session does not make them privileged.

Shortly after Bradshaw's refusal to answer questions about whether he intends to take an adverse employment action against Plaintiff, in October 2024, Defendant Bonner County terminated Plaintiff's employment, claiming it was a reduction in force. Dkt. 126-2, at ¶ 1. In addition to the reasons stated above, by justifying the County's most recent adverse action against Plaintiff as a RIF, rather than the continued retaliation that Plaintiff alleges, Defendants placed their decision-making communications at issue, impliedly or implicitly waiving any alleged privilege. It would be manifestly unfair to allow Defendants to avoid answering questions about Defendant Bradshaw's communications to Plaintiff's supervisor about his intent to take that adverse employment action.

**G.    Veronica Dixon refused to answer questions about non-privileged communications.**

Defendants did not meet their burden of showing that Veronica Dixon's communications are privileged; they merely repeated that Defense counsel's objection at the deposition was "focused" or "narrow." Dixon is an alleged participant in the Defendants' retaliation so her complaints about Plaintiff to others, including their boss, Louis Marshall, are probative of

Plaintiff's claims and Defendants' defenses. Defendants have failed to show that she was seeking legal advice, as opposed to venting or reporting to her boss, Marshall, in his business function capacity. Likewise, Defendants have failed to show that how she became aware of specific facts or events (such as what law firms Defendant Bonner County was considering hiring) or whether other people were aware of specific actions she took (such as gathering records for litigation) were privileged communications. Defendants have not claimed that Dixon, who was Plaintiff's paralegal, was part of the Defenses' litigation team, that they had disclosed their litigation plans to her within the scope of her job, or that she was asking for legal advice that contained such information.

### H. Defendants Have Impliedly Waived Privilege Over Luke Omodt's Communications.

At deposition, Defense counsel instructed now-Defendant, Luke Omodt, not to answer questions about whether he sought or obtained legal advice before publishing a news article in which he accused Plaintiff of violating professional ethics rules. *See* Dkt. 126, Ex. G at 145:6-13. Because Defendants contend that Plaintiff's legal advice and conduct violated the Rules of Professional Conduct, Defendants impliedly or implicitly waived privilege over communications concerning this issue. As a result, they cannot "abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker*, 331 F.3d at 719. Moreover, Omodt's defense to Plaintiff's defamation and false light privacy claims renders any steps that he took to verify the truth of his statements before publishing them in his public attack on Plaintiff probative of his defenses to those claims, impliedly or implicitly waiving privilege.

**H.    Nancy Twineham refused to answer questions about Plaintiff's legal advice that Defendants have impliedly or implicitly waived.**

Defendants cite only to questions that Nancy Twineham answered, not to the question that she refused to answer, which is located on page 162 of her deposition.[3] Defense counsel instructed her not to answer that question: "[W]hat advice did [Plaintiff] give?" Dkt. 118-9, Ex. H, at 162:4-8. Since Defendants have waived protection by putting the quality and fidelity of Plaintiff's legal advice at issue, they have implicitly or impliedly waived protection over the answer to that question.

## II.    CONCLUSION

The Court should hold that Defendants have impliedly or implicitly waived attorney-client privilege over all oral and written communications placed at issue and order the witnesses to answer the questions posed to them at their depositions.

DATED this 4th day of December, 2024.

By: CUSACK LAW FIRM

*/s/ April M. Linscott*
April M. Linscott, ISB #7036
april@mcusacklaw.com

*Attorney for Plaintiff*

By: MacDONALD HOAGUE & BAYLESS

*/s/ Jesse Wing*
Jesse Wing, WSBA #27751
*Pro hac vice*
Joseph R. Shaeffer, WSBA # 33273
*Pro hac vice*
Anika R Ades, WSBA #60298
*Pro hac vice*
Email: Jessew@mhb.com
Email: joe@mhb.com
Email: anikaa@mhb.com

*Attorneys for Plaintiff*

---

[3] In their opposition brief, Dkt. 139, at 17, Defendants state that they filed additional pages of Twineham's deposition, (pages 163-165), but it does not appear that they did so. As a courtesy, Plaintiff has submitted them. *See* Reply Declaration of Jesse Wing, Ex. 2.

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that I caused the following to be electronically filed with the Clerk of the

3

Court using CM/ECF System which will send notification of such filing to the following parties:

4

5

MOORE ELIA KRAFT & STACEY, LLP

Michael J. Elia
Nathan C. Beckman
702 W. Idaho St., Suite 800
Boise, Idaho 83702
mje@melawfirm.net
nathan@melawfirm.net

6

7

8

*Attorneys for Defendants Dan McDonald and Brad Ptashkin*

9

BAKER STERCHI COWDEN & RICE, LLC

10

Robert L. Christie, ISB # 9903
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
Phone: 206-957-9669
Fax: 206-352-7875
Email: bob.christie@bakersterchi.com

11

12

13

*Attorney for Defendants Bonner County, Idaho, Mike Rosedale, and Luke Omodt*

14

DATED this 4th day of December, 2024, at Seattle, Washington.

15

16

*/s/ Lucas Wildner*
Lucas Wildner, Legal Assistant

17

18

19

20

21

22

23