# EXHIBIT ONE
# TO REPLY DECLARATION OF JESSE WING



705 Second Avenue
Suite 1500
Seattle, WA
98104-1745

**English** 206.622.1604
**Español** 206.694.1685
**Fax** 206.343.3961

801 S Marquette Ave
Suite 200
Minneapolis, MN
55402

**English** 612.349.2720

Alec Bayless (1921-1991)
Francis Hoague (1909-1993)
Kenneth A. MacDonald (1917-2012)

Anika Ades
Julia Bladin
Katherine C. Chamberlain
Andrew T. Chan
Kassidy Dean
Zsa Zsa DePaolo
Kirsten S. Eklund
Nathaniel Flack
Timothy K. Ford
Katrin E. Frank
Lauren I. Freidenberg
Ester Greenfield
Sam Kramer
Braden Pence
Mika Rothman
Joe Shaeffer
Jeffrey L. Taren
Jesse Wing
Lola S. Zakharova

August 1, 2024

**VIA EMAIL:** Daniel_fredrickson@id.uscourts.gov

Danial Fredrickson
Judicial Clerk
Judge Brailsford's Chambers
U.S. District Court, District of Idaho

Re: *D. Scott Bauer v. Bonner County*, Case No. 2:22-cv-00270-AKB

Dear Mr. Fredrickson:

    Here are the parties' positions.

### A. Plaintiff's Assertion of Basic facts

    Plaintiff is a civil deputy prosecuting attorney for the County. Defendants are Bonner County (Plaintiff's employer), now-former Chair of the County Commissioners Dan McDonald, and now-former Chief Information Officer (CIO) Brad Ptashkin. Plaintiff alleges that Defendants retaliated against him for his legal advice (state law whistleblowing) and for engaging in protected speech (filing grievances, tort claims, and this lawsuit) regarding: (1) protection and control over the integrity and security of elected officials' public data to prevent unauthorized access and misuse; (2) establishment of internal financial controls and adherence to them to prevent embezzlement of public funds and to comply with Idaho law and federal grant requirements; and (3) prevention of further embezzlement of Fair ground public funds by ensuring the County starts internally and externally financially auditing its Fair Board.

    Through his job, Plaintiff authored and received many emails, reports, and other documents about these subjects—including with, about, or in response to his legal opinions, advice, and petitioning activity—and the opposition of County officials to him, support for his position by his boss, and the legal opinions of other counsel about the same topic. He still possesses these documents and his counsel used them during depositions. The documents and the testimony of witnesses about these topics are highly probative of his claims and Defendants' motivations, and the Defendants' defenses. Plaintiff contends that the documents and testimony

Daniel Fredrickson
August 1, 2024
Page 2

are either not protected or that Defendants' asserted protections are waived. To facilitate proceeding with depositions, Defendants agreed that witnesses would answer questions over which the Defendants assert protection (attorney-client, auditor-client, or confidential) in exchange for Plaintiff stipulating that, pending further stipulation or court order, Plaintiff cannot disclose such testimony or the documents produced by Defendants' external auditor in response to a subpoena, except to the parties, lawyers, and the witness being deposed. A court order is needed to resolve the privilege assertions so that Plaintiff can use the evidence obtained.

1. **Defendant Bonner County *refused to designate a witness* under Rule 30(b)(6) to testify on its behalf about three topics listed in Plaintiff's deposition notice**

    Plaintiff served Bonner County a Rule 30(b)(6) deposition Notice with nine topics. *See* attached Notice. Defendants flatly refused to designate a witness to testify on three topics.

    Under Fed. R. Civ. P. 30(b)(6), when a party provides notice of "matters for examination," to an entity or organization, the organization is "required to designate one or more persons to testify about the matters noticed." *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.,* 262 F.R.D. 552, 558 (D. Mont. 2009). Regardless of whether Defendants dispute that they are responsible for the actions committed or whether they allege they took actions in the scope of their employment, Plaintiff is entitled to depose them on his allegations. "The organization's position includes not only "facts within the corporation's knowledge, but also its subjective beliefs and opinions." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (citing *Lapenna v. Upjohn Co*., 110 F.R.D. 15, 20 (E.D. Pa. 1986)).

    Even after Plaintiff addressed Defendants' objections, as explained below, Defendants refused to designate a witness to testify on its behalf about Topics 4, 5, and 6.

    **Topic 4 (regarding statements to the public about Plaintiff by County officials and employees)**. The County was told to prepare to testify about the statements in Plaintiff's operative Complaint and in his pending proposed supplemental/amended Complaint. Anticipating Defendants' objections, Plaintiff explained that regardless of whether the court grants Plaintiff's motion to amend, the challenged events are relevant and admissible as to the alleged pattern of behavior, Defendants' motives, and Plaintiff's damages, among other things.

    **Topic 5 (Defendants' defenses)**. Since the topic is Defendants' asserted and pled defenses, Plaintiff could not specify them with any more particularity than Defendants did, so the County was obligated to produce a witness who will testify about the facts underlying each defense, including the application of the ethics rules, whether and when the County relied upon the ethics rules for its decision-making, etc., even if the designee also testifies that the County relies upon the experts' interpretation of the ethics rules. Defendant agreed to waive their mitigation of damages affirmative defense (without prejudice) but refused to designate anyone to

Daniel Fredrickson
August 1, 2024
Page 3

answer questions about its other defenses. Defendant said Plaintiff has no right to ask any witness on behalf of the County about the facts underlying its experts' opinion.

**Topic 9 (retaliatory threats during mediation)**. This topic includes Defendants' indirect communications to Plaintiff at mediation. The County's objection that such communications are "confidential" is a challenge to admissibility, not to a Rule 30(b)(6) Notice and is not a basis for refusing to answer questions at a deposition. As explained below, the communications are relevant and admissible to prove illegal retaliation.

In his operative Complaint, Plaintiff alleges: "On May 12, 2023, during mediation, Defendants provided to Bauer copies of six emails in which he had sought advice about preserving evidence of potential violations of law, and asserted that unless Bauer agreed to dismiss this lawsuit for nothing or leave his job for a settlement amount of their choosing they intend to call two well-recognized Idaho jurists to testify in open court that by sending the emails Plaintiff had violated the rules of professional conduct." Dkt. 78, Para. 59. "Mr. Bauer did not violate the rules of professional conduct, and Defendants' threat was made in retaliation for Bauer's protected activity." *Id*.

Plaintiff alleges that during those settlement discussions, Defendants threatened to publicly allege that he violated the RPCs unless he dropped his lawsuit or quit his job and accepted whatever settlement Defendants offered. Seeking legal advice regarding preserving evidence of potential violations of law and filing his lawsuit are protected activities under the Idaho Whistleblower law and the First Amendment. Threatening to expose Mr. Bauer publicly because his protected activity states a legal claim under these two laws.

Defendants contend that evidence of their alleged misconduct is absolutely forbidden under ER 408 and LR 16. They are wrong.

**ER 408**. This federal rule's prohibition from admitting settlement communications is, by its own terms, not absolute. Subsection (b), entitled "EXCEPTIONS, states: "**The court may admit this evidence for another purpose, such as proving a witness's bias** or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." (Emphasis added). Courts have admitted such communications for a variety of reason, including when they establish a violation of the law, such as retaliation.

In the employment context, courts admit settlement discussions into evidence to support an independent claim of retaliation. For example, a district court in the Ninth Circuit held: "The Court finds considerable support for plaintiff's position that the settlement offer may be admitted under Rule 408(b) as substantive proof of retaliation." *Hotchkiss v. CSK Auto, Inc.* No. 12-CV-0105-TOR) 2013 WL 12097445, at *2 (E.D. Wash., Mar. 5, 2013). The facts in *Hotchkiss* are strikingly similar, but not even as strong as Mr. Bauer's allegations:

Daniel Fredrickson
August 1, 2024
Page 4

> Plaintiff argues that the letter and related evidence are admissible under Rule 408(b) not only for the limited purpose of discrediting O'Reilly's explanation for not rehiring him sooner, but also as **substantive evidence of unlawful retaliation**. **Specifically, Plaintiff asserts that the terms of the offer itself, which require Plaintiff to withdraw his WSHRC discrimination charge and waive all related claims against O'Reilly in exchange for a part-time RSS position in Spokane, are so unfavorable as to warrant an inference that O'Reilly acted with retaliatory motive.** Accordingly, Plaintiff seeks to **admit the settlement offer and related evidence to establish a prima facie case of unlawful retaliation**.

*Id*. (emphasis added). Bauer's facts are stronger because Defendants sought not only to abuse their bargaining position, they threatened to publicly harm him if he did not drop his claims.

    The court in *Hotchkiss* cited appellate authority for its ruling: "Perhaps the strongest authority for this position, which neither party cited in its briefing, is the District of Columbia Circuit's decision in *Carney v. American University*, 151 F.3d 1090 (D.C. Cir. 1998)." *Id*. In *Carney*, the D.C. Circuit held that evidence of settlement offer may be used to show "an independent violation . . . unrelated to the underlying claim which was the subject of the correspondence . . . .") The Sixth Circuit and district courts in the Second Circuit likewise have held that evidence of alleged wrongful acts during settlement negotiations are admissible to prove the wrongful acts. *See Uforma/Shelby Business Forms, Inc., v. NLRB*, 111 F.3d 1284, 1294 (6th Cir. 1997) ("we hold that Rule 408 does not exclude evidence of alleged threats to retaliation for protected activity when the statements occurred during negotiations focused on the protected activity and the evidence serves to prove liability either for making, or later acting upon, the threats."); *Scott v. Goodman*, 961 F. Supp. 424, 437 (E.D.N.Y. 1997) (Rule 408 is "inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions."); *Carr v. Health Ins. Plan of Greater New York, Inc*., No. 99Civ3706, 2001 WL 563722 (S.D.N.Y. May 24, 2001) ("[e]ven if the group members' statements were offers of settlement, they are nonetheless admissible because they are being introduced not to prove liability for the claims being settled, but for an entirely separate claim of retaliation.").[1]

    **District Local Rule Civ. 16.4(b)(3)**. The Rule provides, in relevant part, "None of the matters or information discussed during the mediation will be communicated to any judge assigned to the matter, unless all parties expressly stipulate to such communications, conflicts with the plain language of FRE 408(b), which expressly provides that such evidence may be admitted for purposes other than liability of the underlying claim. See above.

---

[1] Defendants have disclosed two expert opinions, which at mediation they had threatened would expose him. One of them implies that because they followed through on their threat, it was not illegal. No precedent support this; fulfilling a threat only makes it more damaging.

Daniel Fredrickson
August 1, 2024
Page 5

Binding precedent in the Ninth Circuit holds that "District courts may promulgate their own local rules so long as those rules comport with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 83(a)(1)." (Emphasis added). *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013). Where a local rule conflicts with a Federal Rule, the local rule is of no force and effect. *See id*. at 917. ("The local rule at issue here, Western District of Washington Rule 7(b)(2), is not simply a 'deemed admitted' rule. It permits the court to deem a non-movant's failure to respond a complete abandonment of its opposition to summary judgment…. **Because this local rule conflicts with the Federal Rule, it cannot provide a valid basis for granting a motion for summary judgment."**) (Emphasis added). Local Rule 16.4 cannot supplant FRE 408.

Further, Mr. Wasden, one of Defendants' experts, has opined that Mr. Bauer violated LR 16.4(b)(3)(C) by alleging that "by pleading paragraph 59 the Plaintiff has communicated to the judge assigned to case, "matters or information discussed during the mediation" In doing so, Mr. Wasden has put at issue what "matters or information" were actually "discussed during the mediation." Report, p. 25.  Mr. Wasden's assertion that Mr. Bauer violated Local Rule 16 depends entirely on introducing the content of what Mr. Bauer alleges occurred during the mediation. Reinforcing that Mr. Wasden's opinion puts what occurred at mediation at issue, Mr. Wasden opines that: "Mediation is precisely the place for the defendant parties to assert, 'that unless Bauer agreed to dismiss this lawsuit for nothing or leave his job for a settlement amount of their choosing they intend to call two well recognized Idaho jurists to testify in open court that by sending the emails Plaintiff had violated the rules of professional conduct.'" *Id*., p. 26.

Defendants' accusations waive their assertion of protection under the Local Rule, and Plaintiff is entitled under ER 408 to use their conduct as evidence of retaliation at the mediation. Plaintiff is entitled to depose the County about what happened, and why.

2. **Defendant Bonner County failed to prepare its Rule 30(b)(6) designee to testify about five topics and its witness did not answer questions on behalf of the County.**

Defendants objected that Plaintiff's Notice of Deposition was not sufficiently particular about five topics. Plaintiff responded via email on June 20, 2024, *after* which Defendant County designated its elected Prosecutor Louis Marshall to testify on its behalf as to all five.[2] In response to a proposal by Defense counsel, via email dated June 23, 2024, Plaintiff's counsel wrote: "Plaintiff agrees to the County designating specific portions of Mr. Marshall's deposition that has already been conducted as responsive to these topics, so long as the County makes Mr. Marshall available for a follow-up deposition to answer additional questions on these topics since Mr. Marshall had not been designated on these topics at the time of his deposition so I did not ask all questions that I would have." In response, Mr. Naylor wrote (embedded in the same

---

[2] Before his individual deposition, Defendants had designated Marshall to answer Topic 3 questions (which he did based on personal knowledge), so there is no dispute about that topic.

Daniel Fredrickson
August 1, 2024
Page 6

email after his initials, "kgn"), "Defendants will agree to this, but we have not obtained a copy of the Marshall deposition transcript yet. In any event, we can make Mr. Marshall available to supplement his deposition testimony as a county representative for purposes of the 30b6 deposition on July 2, beginning at 9:30am PT." Expressly for this purpose, Mr. Naylor and Plaintiff's counsel ordered a rough draft of Mr. Marshall's deposition transcript.

In preparation for the deposition, Plaintiff's counsel addressed Defendants' assertions that the topics lacked sufficient particularity by explaining the following:

**Topic 1**. The County should prepare to testify about **"[a]llegations that Plaintiff provided inaccurate or improper legal advice**" from January 1, 2021 to the present. Although Defendants claim "the County did not itself allege that Plaintiff provided inaccurate or improper legal advice," that is a matter of dispute. The County acts through individuals so it can argue that it is not liable for allegations made by individuals or deny they made the statements or say that it disagrees with their statements, but that is all irrelevant to the scope of Rule 30(b)(6) topics.

**Topic 2**. **Allegations that Plaintiff misused or improperly accessed work computers**. This covers the same time period as topic 1. The allegations are listed in the Complaint and was the subject of an IEL investigation report, and had been testified to in multiple depositions.

**Topic 6**. The County should prepare to answer questions about **"[t]he two investigations conducted by Idaho Employment Lawyers into Plaintiff's allegations**," which include its scope, whether the County accepts or rejects its findings, the refusal of its leaders and some of its employees to participate, what it did in response to the investigation, why it did not take other actions in response or as part of the investigation. These are all obvious aspects of this topic.

**Topic 7**. **"Responses to the Plaintiff's requests for name-clearing hearings and grievances since December 1, 2021."** Since the events are detailed in Plaintiff's amended and proposed supplemental/amended Complaints there is ample particularity.

**Topic 8**. As with topics 1 and 2, the County should be prepared to testify about "**Defendants' responses to Plaintiff's protected activity**" from January 1, 2021 to the present. Since these events are detailed in Plaintiff's amended and proposed supplemental /amended complaints there is ample particularly. At the County's request, Plaintiff agreed to amend the topic to add "if any" as to responses and "alleged" to protected activity.

But Defense counsel never designated any portions of Mr. Marshall's individual deposition. At the beginning of the Rule 30(b)(6) deposition, Mr. Naylor announced that the County had changed its mind and insisted that, without prior notice, Plaintiff's counsel conduct a full, new Rule 30(b)(6) deposition of Mr. Marshall on all five topics without being able to rely on Mr. Marshall's prior testimony, and without having prepared questions or exhibits to do so.

Daniel Fredrickson
August 1, 2024
Page 7

And Mr. Naylor remarked that Plaintiff's counsel was limited to a total of seven hours so would risk having no time left to cover the three topics in dispute in the event the Court orders the County to designate a witness on those topics. Plaintiff's counsel objected to Defendants' untimely change of position, and said he would have to see whether he could effectively and efficiently conduct the deposition. *See* Rule 30(b)(6) dep. at 7:20-12:13.

And once the deposition was underway, Mr. Marshall repeatedly equivocated in answering questions on behalf of the County, in three ways. When asked whether certain facts are true or what the County's opinions are, he: (1) testified that the County has no position because the Board of Commissioners had not taken a vote on the issue, but may take a position later; (2) answered questions about other facts and opinions on the ground that he had gleaned from documents or communications with individual commissions what he believes their collective position is; and (3) answered questions as the elected Prosecutor but declined to confirm his answer was on behalf of the County. Examples of these answers are attached.

When asked whether the County would later take a position only if the Board took a vote whether its failure to vote would prevent it from later taking a position on the facts or expressing its opinions during summary judgment and trial, Mr. Marshall he said "no." *Id*. (47:5-48:22). When asked to explain why he gave answers as the elected Prosecutor but would not or could not confirm that they are on behalf of the County, he testified that sometimes the County is the Commissioners, sometimes it is him, and sometimes it is other elected officials. *Id*. (54:19-58:6).

Plaintiff's counsel explained that Defendant County's failure to present a designee who is knowledgeable about each noticed topic and able to provide answers binding on the County, as well as its unfair surprise announcing that it was not designating any of Mr. Marshall's prior testimony as Rule 30(b)(6) testimony undermined the purpose of the Court Rule, requiring postponement of the rest of the deposition to seek relief from the court. *Id*. (61:18-67:2).

3. **Defendants' assertion of attorney-client privilege over documents exchanged in discovery and over testimony during multiple depositions**.

Defendants have asserted attorney-client (A/C) privilege over: (1) communications between Plaintiff and County employees; (2) communications and opinions expressed by, to, or in the presence of Plaintiff's supervisor (Elected Prosecutor Louis Marshall) or other members of Marshall's Office or outside counsel about Plaintiff's advice or communications about it; and (3) opinions or communications by, to, or in the presence of Marshall or other members of his Office or outside counsel about the same topics as Plaintiff's opinions. Nevertheless, Defendants agreed for witnesses to answer deposition questions on these topics without waive privilege—what counsel ultimately denominated the "Bubble."

Daniel Fredrickson
August 1, 2024
Page 8

      Since hours of testimony over the course of multiple depositions were conducted in the "Bubble," it is impractical to present them here. So, instead, attached are examples that illustrate the need for a ruling on waiver to be applied to the testimony and documents.

      As explained below, Defendants have waived attorney-client privilege over these oral and written communications and testimony. In addition to denying Plaintiff's allegations, Defendants have asserted affirmative defenses they contend absolve them of liability for allegedly retaliating against him for protected whistleblowing and First Amendment activity. Namely, the County asserts it was justified in reassigning plaintiff from advising the Board and then from advising the Fair Board, and then placed him on involuntary administrative leave—all in view of the public, under pressure from Defendants and other officials who claim they had concerns about the quality and accuracy of his legal advice and because they contend it would have been a violation of the Idaho RPCs for him to continue providing legal advice to the County. In addition, Defendants asserted affirmative defenses 6, 7, 8, 9 and 11 arguing related justifications. *See* Dkt. 81. And the County has disclosed two extensive expert opinions and answers to Plaintiff's Third Set of Discovery, Interrogatories 3 and 4.

      By asserting these defenses, Defendants have placed otherwise privileged communications at issue, waiving any claim to privilege over them. Otherwise, Defendant Bonner County would be able to assert its affirmative defenses, selectively waiving privilege by attacking Mr. Bauer's advice while at the same time shielding the relevant opinions and communications from his boss, Mr. Marshall, and others, that show Mr. Bauer's opinions were legally correct and benefitted the County rather than being adverse to it. And, despite knowing this, Defendants were hostile to Plaintiff's opinions and took action against him because of his advice—all of which is essential for Plaintiff to challenge Defendants' defenses, and support his claims. Defendants cannot be allowed to claim that Bauer's opinions were wrong and that others disagreed with him without disclosing who expressed the opinions, what they were, who they were shared with and when, what decisionmakers did in response to those opinions, how they were treated by Defendants, and without subjecting their opinions to scrutiny and challenge.

      "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (quoting *Chevron Corp. v. Penzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)). The policy underlying this rule is simple: the privilege cannot be used "both as a sword and a shield." *Id.* at 1162; *see also* 3 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE, § 541.41[1] (Joseph M. McLaughlin, ed. Matthew Bender 2d ed. 2006).

      "'Implied' waivers are those where the party puts legal advice at issue in the case and thus impliedly waives the privilege." *Washington v. Alderwood Surgical Ctr.*, LLC, No. 2:22-CV-01835-RSM, 2024 U.S. Dist. LEXIS 78931, at *8 (W.D. Wash. Apr. 30, 2024). An implied waiver of the attorney-client privilege occurs when "(1) the party asserts the privilege as a result

Daniel Fredrickson
August 1, 2024
Page 9

of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

Plaintiff's protected activity included advising and acting to protect Bonner County from cybersecurity violations. In response, Defendants accused him of imprudent spending on conferences, training, and books on cybersecurity and accused him of computer hacking and other computer misconduct. The County justifies its adverse actions by claiming that Plaintiff was "adversarial with the BOCC and its employees," and that this "breakdown in the relationship may implicate his professional duties." County's Responses to Plaintiff's Second Set of Discovery, ROG 3 (at 9). In concluding that Plaintiff was precluded from providing legal advice to the BOCC, the County relies on privileged emails between Plaintiff and outside counsel, Paul Fraidenburgh. *Id*. at 9–10 (citing documents bates-numbered 1.001020–24, SB00510–13)— which it presented at mediation, and claimed "concerns about whether Plaintiff was actively advising other Elected Officials to pursue interests that Plaintiff knew or should have known were in conflict with the BOCC's interests." *Id*. at 10.

"When the client alleges a breach of duty to him by the attorney, the privilege is waived as to all communications relevant to that issue." *Skelton v. Spencer*, 98 Idaho 417, 420, 565 P.2d 1374 (1977) (quoting 8 WIGMORE ON EVIDENCE § 2327 at 638). Here, the County has waived its privilege by putting Plaintiff's legal advice directly at issue in its defenses. By claiming that Plaintiff's legal advice and privileged communications with County officials and outside counsel justify its decision to take adverse employment actions against Plaintiff, the County put that legal advice and privileged communications directly at issue. For Plaintiff to defend against its claim that he was precluded from providing legal advice to the County, he must be able to testify about those otherwise privileged oral and written communications and secure the oral and written communications, including testimony, of others about his advice, their opinions and their advice to the County on the same topic, to challenge Defendants' asserted defenses and their credibility and that of their witnesses, and to show their motives for taking action against Plaintiff.

4. **Instructions Not to Answer During Depositions**

In addition to answering questions only under the Bubble stipulation, Defense counsel instructed witnesses not to answer questions on privilege grounds that we contend were improper or where the privilege is waived. Attached are examples.

Daniel Fredrickson
August 1, 2024
Page 10

### 5. Bonner County's assertion of auditor-client privilege over documents exchanged in discovery and over the testimony of its external auditor completed this week.

Defendants' external auditor, Tony Matson of Hayden Ross, produced documents relating to Plaintiff's legal advice and whistleblowing activity alleging that the County and the external auditor had failed to conduct a legally required financial audit of the County's Fairgrounds, from which its Director was ultimately accused of embezzling $250,000 and then committed suicide when accused. Matson asserted Idaho Code Section 203A privileges auditor-client communications. The parties and Matson stipulated to him producing the requested documents and testifying, subject to a stipulation that they not be disclosed absent further stipulation or court order. Defendants have not stipulated further necessitating court intervention.

Idaho privilege does not govern here. Federal common law applies to a case in federal court based on a federal question. *See United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) ("Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law."). There is "no confidential accountant-client privilege under federal law." *Semi-Materials Co. v. MEMC Elec. Materials, Inc*., No. 4:06CV1426 FRB, 2010 U.S. Dist. LEXIS 77878, at *5 (E.D. Mo. Aug. 3, 2010) (citing *United States v. Margaritas Mexican Rest., Inc.*, 138 F.R.D. 566, 568-69 (W.D. Mo. 1991)). A search revealed no precedent holding a privilege exists under federal common law. And, in *Ruehle*, the Ninth Circuit held that external auditor Ernest & Young hired by a company was a "third-party" so its CFO's communications with the auditor *and* the company's lawyers were not protected under the attorney-client privilege. *Id*. at 607 ("**by electing to reveal the information gathered to Ernst & Young** (and later to various agencies of the United States), deliberately waived any corporate attorney-client privilege it held with respect to all matters at issue.") While the court did not rule on whether an auditor privilege exists, its opinion suggests no support for one.

Even if there was a federal common-law privilege, Defendants bear the burden of proving it. *See Ruehle*, 583 F.3d at 607 ("[a] party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication.") (citing United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)). "Under federal law, the attorney-client privilege is strictly construed." *Ruehle*, 583 F.3d at 607 (rejecting district court's adoption of California law to hold that all "communications made in the course of an attorney-client relationship are presumed confidential"—a "liberal view of the privilege that conflicts with the strict view applied under federal common law, which governs here." *Id*. at 608-609.

> "The fact that a person is a lawyer does not make all communications with that person privileged." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (citing Chen, 99 F.3d at 1501). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (quoting *Weil v. Inv./Indicators, Research & Mgmt., Inc*., 647 F.2d 18, 24 (9th Cir. 1981); accord *United States v. Plache*, 913 F.2d 1375,

Daniel Fredrickson
August 1, 2024
Page 11

      1379 (9th Cir. 1990). "[T]he privilege stands in derogation of the public's 'right to every man's evidence' and as 'an obstacle to the investigation of the truth,' [and] thus, . . . '[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'"

*Ruehle*, 583 F.3d at 607. Federal common law does not recognize an auditor privilege, and such a privilege would not be equivalent let alone broader than the attorney-client privilege.

**6. Defense counsels' instructions to witnesses not to answer questions on grounds of attorney-client privilege.**

      There are a number of examples, attached, of Defense counsel instructing witnesses not to answer questions on privilege grounds that were improper because they were personnel or business advice, or the privilege was waived because Defendants placed the advice "at issue."

**7. Defendant County's assertion of confidentiality protection over documents and testimony regarding the County's IT weaknesses or vulnerabilities.**

      During the deposition of two IT witnesses, Marcus Robbins and Robert Kirtley, Defendants asserted objections to possible public disclosure of documents and testimony reflecting weaknesses in Bonner County's IT infrastructure, software, or policies and practices. For the purposes of conducting the depositions, Plaintiff stipulated that such testimony and documents would be protected from disclosure absent further stipulation or court order.

      It is Defendants' burden to seek and obtain a protective order. CR 26(c). They have not. Nor have they proposed a stipulation that protects only documents or portions of documents or testimony that are necessary, through redaction or sealing. Defendants cannot sit on their hands and prevent Plaintiff from relying upon evidence that is relevant to his claims and their defenses.

**8. Defendant McDonald refused to produce documents in response to RFPs 7 and 8 of Plaintiff's Relabeled Fourth Set of Discovery, which request his FaceBook HTML file downloads**

      McDonald has failed to adequately search and produce all responsive documents from his FaceBook account. The first time that Plaintiff requested them, McDonald denied that he had *any* responsive documents. That was plainly not true, so Plaintiff served a follow-up request with detailed instructions on how to locate, collect, and produce the responsive documents from FaceBook. McDonald then produced 129 pages of messages—many of them highly relevant to Plaintiff's claims, on which McDonald was examined at his deposition. But his accompanying pleading said he had refused to use the Plaintiff's search terms (carefully crafted combinations

with delimiters), claiming there were too many so he ignored Plaintiff's request for an IT specialist to conduct the search. Instead, he applied simplistic single-word searches on his own.

But the terminology is search "terms," not "words." Each "term" can be a word or a phrase, or a combination, with delimiters. In *Tornabene v. City of Blackfoot Tornabene*, 2024 U.S. Dist. LEXIS 35414, at *14 (D. Idaho Feb. 27, 2024), this District referenced the Sedona Principles on ESI production, which "Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery" defines keyword search terms (KSTs) as combinations of terms designed to maximize recall (completeness) and precision (accuracy) on an issue-by-issue basis. *See also*, dictionary.com definition of "term" as "a word or group of words.…" And Dkt. 79, at 9 (Para. J), requires, "The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame," which McDonald failed to do. *Tornabene* emphasized that electronic documents must be produced just as paper documents would be, regardless of search term agreements. 2024 U.S. Dist. LEXIS 35414, at * 12.

The result was an incomplete production. The documents he produced contained missing headers (names, dates, etc.), ends of messages, and black boxes in place text or pictures, and he failed to identify each deleted message, despite admitting at his deposition that after the preservation date he deleted at least one relevant FaceBook post. *See* McDonald 6/27/24 Dep. at 306. Grace Bauer testified that he deleted other FaceBook messages too.

McDonald testified that he conducted his own search and collection of FaceBook messages. The District of Idaho has recently criticized this practice, as often inadequate: "Defendants' self-search conducted without oversight by legal counsel, technical support, or a forensic expert, at the very least, raises questions regarding the accuracy and completeness of their document collection," requiring the responding party to negotiate search terms. *Tornabene*, 2024 U.S. Dist. LEXIS 35414, at *14-16.

To obtain all Mr. McDonald's responsive FaceBook messages, Plaintiff served yet another set of requests (Fourth Discovery Requests 7 and 8). McDonald refused to comply.

**Defendants' Summary of Discovery Dispute**

Plaintiff's Counsel has taken fourteen depositions in which he has had the opportunity to lengthily and exhaustively question the witnesses about a broad scope of topics, many of which went far afield of the actual claims and defenses in this case. By and large Defense Counsel accommodated. We even agreed to what became known as the "bubble," whereby Plaintiff's Counsel could ask questions about what would otherwise be protected information without such answers being deemed a waiver (subject to future stipulation or Court order). At times, Defense Counsel nonetheless was required to object to certain questions that improperly invaded protected communications and which were inappropriate for the "bubble." Overall, Plaintiff's Counsel had

Daniel Fredrickson
August 1, 2024
Page 13

a full and fair opportunity to depose numerous witnesses and uncover nearly every stone in the field, and the adjacent parking lot. The record in this case is voluminous. It is difficult to imagine what is realistically left for discovery; the parties should by now have a clear understanding of the relevant information concerning their respective positions. Plaintiff merely wants to spend more time and resources exhaustively uncovering pebbles that have no realistic relevance to the case.

As to specific topics, please consider the following:

1. **Privileged Communications (Attorney-Client and Accountant-Client) and Related Documents**

Plaintiff argues that various communications are either not privileged or are waived, purportedly because Defendants cannot use them as both a "shield and a sword." That is, Defendants cannot attack Plaintiff on the basis that he gave bad legal advice, but then refuse to discuss the legal advice he gave, or what other advice in the attorneys in the prosecutor's office gave. This is largely, however, <u>not a discovery issue</u>. Plaintiff's Counsel was able to depose many witnesses in the "bubble." He now has that information. When and how to use it is a matter for future debate in the right context, whether in connection with summary judgment, a motion in limine, or at trial.

Regarding documents related to the "bubble" information, this may be a moot issue. It appears that Plaintiff has everything that Defendants have. That said, Defense Counsel will review with their clients and supplement as appropriate as a sort of "document bubble" in cooperation with Plaintiff's Counsel.

2. **Instructions not to answer**

Despite the protections of the "bubble," Defense Counsel did object in depositions to certain questions that improperly invaded attorney client privileged communications. Plaintiff's Counsel has identified a handful of examples from the depositions of Louis Marshal, Brad Ptashkin, Nancy Twineham, and Dan McDonald. The questions plainly sought privileged communications. Defense Counsel routinely offered that Plaintiff's Counsel could lay additional foundation to address concerns with disclosure of privileged communications, and when that did not work was at time required to assert the privilege and instruct the witness not to answer. Defense Counsel stands on those instructions. It is unclear what the exact basis is for Plaintiff's Counsel's contention that he is entitled to ask witnesses about their conversations with their attorneys or how they have actually been categorically waived. Again, this is largely a "use" issue. Plaintiff's apparent concern that new information may be sprung on him at trial is simply unrealistic. If Defense Counsel has asserted a privilege, we understand that we cannot at the last minute waive the privilege and use it at trial where there was no opportunity to conduct discovery into the communication. But Plaintiff's attempt to deem all or nearly all privileged communications as waived is baseless.

Daniel Fredrickson
August 1, 2024
Page 14

### 3. Emails

Defense Counsel objected to various requests for production of emails, some involving Brad Ptashkin and Dan McDonald with County officials or employees after their separation from the County. This is an area where it appears that Counsel will be able to resolve without Court intervention.

### 4. Rule 30(b)(6) Deposition

On June 13, 2024, Plaintiff's Counsel provided us with a Rule 30(b)(6) deposition notice, for a deposition scheduled on July 2. The notice contained nine incredibly broad categories that failed to describe the topics with reasonable particularity as required by the rule. After several communications between counsel, some of the topics were narrowed a bit, but ultimately remained unreasonably broad in scope. Nevertheless, the County designated its elected prosecuting attorney Louis Marshall to testify on its behalf on all but three topics (Topics 4, 5, 9). Mr. Marshall has been the prosecutor for years, supervised Plaintiff, advises the County, and was personally involved in much of the underlying facts of this case. He had also previously already been deposed in this case, in which many topics contemplated by the Rule 30(b)(6) notice were discussed. Mr. Marshall was well prepared to testify and would have done so fully had Plaintiffs' Counsel not prematurely and unnecessarily stopped the deposition. Plaintiff's contention that Mr. Marshall was unprepared is simply baseless.

Plaintiff's Counsel stopped the deposition after only about 90 minutes for the stated basis that who qualifies as the "County" was shifting during Mr. Marshall's testimony. Not so. What Plaintiff's Counsel failed to appreciate during the deposition, and which Mr. Marshall attempted to explain, was that in dealing with an entity with multiple elected officials, there is complexity and nuance to the "County." For example, Elected Official 1 may believe X and take that position in their official capacity. Elected Official 2 may disagree and believe Y and take that position in their official capacity. The disagreement between EO 1 and EO 2 may be left unresolved, and thus there is no overriding "official" position of the "County" as a whole. This is further complicated when discussing a board of county commissioners, which is made up of three elected individuals, but who act as a "body." Thus, Commissioner 1 may believe X, Commissioner 2 may believe Y, and Commissioner 3 may believe Z. But unless they vote as a body as to the specific topic, it is merely their individual opinions, and not the official position of the BOCC or by extension the County.

Mr. Marshall, in answering Plaintiff's Counsel's questions, tried to explain this and answer to the best of his ability the various incongruities between different elected officials. Plaintiff's Counsel, however, grew impatient and prematurely and unreasonably ended the deposition before even covering most of the topics. Indeed, Defense Counsel put on the record at the conclusion of the deposition that Mr. Marshall was answering the questions, even beyond the scope of the depo notice, reiterated that the topics were largely vague and inappropriate, but Mr. Marshall was

Daniel Fredrickson
August 1, 2024
Page 15

nonetheless prepared to testify; yet Plaintiff's Counsel had not even delved into several topics which Mr. Marshall was prepared for. Nevertheless, Plaintiff's Counsel chose to stop the deposition. Plaintiff should not be rewarded with a second opportunity to waste Mr. Marshall's time.

Last, Topics 4 and 5 are unduly broad. Defense Counsel gave Plaintiff's Counsel the opportunity to narrow them sufficiently to designate a witness. He chose not to, and we maintained the objection. More so, insofar as Topic 5 related the underlying bases of Defendants' retained experts Jim Jones and Lawrence Wasden, Plaintiff could have easily scheduled them to be deposed. He again chose not to. It makes little sense to question the County about the experts' opinions. They can speak for themselves.

As to the confidential mediation inquiry (Topic 9) (both in depositions and written discovery), Plaintiff has failed to demonstrate that any waiver or exception applies here. The case law he cites from other jurisdictions are not binding here and even construed as persuasive authority involve entirely different situations. Altogether, they merely stand for the narrow proposition that in rare circumstances mediation communications may not be confidential where they create a separate cause of action, independent of the underlying case. Even based on Plaintiff's characterization of what happened during the mediation, nothing unlawful occurred. It is perfectly acceptable to point out in mediation or settlement negotiations that unflattering information will come to public light if the case is not settled. Plaintiff's contention that this is "extortion" or otherwise unlawful is patently frivolous.

Very truly yours,

MACDONALD HOAGUE & BAYLESS

/s/ Jesse Wing

Jesse Wing

Naylor & Hales, P.C.

/s/ Tyler D. Williams