UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| D. SCOTT BAUER,<br><br>     Plaintiff,<br><br>     v.<br><br>BONNER COUNTY, IDAHO; DAN McDONALD, in his individual capacity; and BRAD PTASHKIN, in his individual capacity, MIKE ROSEDALE, in his individual capacity; and LUKE OMODT, in his individual capacity,<br><br>     Defendants. | Case No. 2:22-cv-00270-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.    INTRODUCTION

The following motions are pending before the Court: (1) Plaintiff's Motion to Seal (Dkt. 117); (2) Plaintiff's Amended Motion to Compel Defendant McDonald to Comply With Request for Relevant Facebook Records and for Determination of Defendants' Assertion of Mediation Privilege (Dkt. 125); (3) Plaintiff's Amended Motion to Compel Deposition Testimony and Motion for Determination of Defendants' Implied Waiver of Attorney Client Privilege (Dkt. 126); the parties' Stipulated Motion to Extend Deadlines (Dkt. 144); and the parties' Stipulated Motion for Leave for Plaintiff to File Substituted Third Supplemental and Sixth Amended Complaint (Dkt. 145).

Having reviewed the record and the parties' submissions, the Court finds oral argument would not significantly aid its decision-making process, and it decides the motions on the record

**MEMORANDUM DECISION AND ORDER - 1**

and the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

## II.    BACKGROUND

Defendant Bonner County (County) employed Plaintiff D. Scott Bauer as a deputy prosecuting attorney from 2007 to 2024. In this role, Bauer provided legal advice and counsel to the Board of County Commissioners of Bonner County (BOCC) and to Bonner County commissioners, among others. In recent years, the BOCC pursued a desire to consolidate and centrally manage the electronic data of the various County offices and to create a Chief Information Officer (CIO) position to manage this activity. Throughout 2020 and 2021, Bauer advised the BOCC, including then-County Commissioner Defendant Dan McDonald and other elected officials regarding the appropriate storage of electronic information under Idaho law. Then, Defendant Brad Ptashkin was appointed as the CIO for the BOCC.

After Ptashkin's appointment, Defendants allegedly began disregarding Bauer's legal advice and took actions to control and manage the records and data of other County officials. When Bauer pushed back on this perceived overreach, McDonald and Ptashkin allegedly intimidated and harassed Bauer and discredited his professional competence and legal advice to other County officials. Bauer alleges that in 2021, both McDonald and Ptashkin spread lies about Bauer to other County officials and employees, including that Bauer attempted to or did install hacking software on County employees' computers. In response, in December 2021, Bauer served a tort claim notice on the County, outlining his grievances against Defendants including, in part, their

MEMORANDUM DECISION AND ORDER - 2

computer-hacking allegations and Defendants' management and control of other County officials' data and records.[1]

Bauer was removed as the BOCC's legal counsel in January 2022 at the insistence of McDonald and others. The County, however, continued to employ Bauer as a deputy prosecuting attorney, and McDonald allegedly continued to spread lies about Bauer and interfered with Bauer's work for the County, including telling others that Bauer was removed as BOCC legal counsel because of his incompetence and instructing various County department leads not to communicate with Bauer regarding County business. McDonald also allegedly took several adverse actions against Bauer in retaliation for his tort claim notice. These alleged retaliatory actions included, among others, falsely accusing Bauer of committing errors and mistakes in his work for the County, of bullying another County employee until she died by suicide, and of misspending County funds. Bauer further alleges that County Commissioner Defendant Mike Rosedale and then-County Commissioner Defendant Luke Omodt each maligned and made false statements about Bauer in late 2023 regarding his legal representation of the County Fair Board. Bauer alleges that, in response to his public records requests, Omodt retaliated against him by requesting an audit of his work expenses.

Presently, Bauer's Second Supplemental and Fifth Amended Complaint (Dkt. 115) alleges numerous claims for relief, including claims under 42 U.S.C. § 1983 against all Defendants for violations of his due process rights and his First Amendment rights; a claim against all Defendants

---

[1]    Bauer alleges he has submitted three tort claims dated December 28, 2021, October 30, 2023, and February 15, 2024; filed numerous grievances; and filed a public records lawsuit against Bonner County relating to the job duties of a legal assistant, Veronica Dixon.

for violation of the Idaho Protection of Public Employees Act (IPPEA), Idaho Code §§ 6-2101 –
6-2109; and express and implied defamation claims against Ptashkin, McDonald, Rosedale, and
Omodt for allegedly placing Bauer in a false light (Dkt. 115). Following extensive discovery—
including apparently fourteen depositions (Dkt. 143-1)—Bauer has filed two motions to compel,
raising essentially three issues: (1) whether the County has waived its attorney-client privilege and
to what extent; (2) whether Bauer may conduct discovery about communications regarding the
parties' failed mediation; and (3) whether McDonald's production of electronically stored
information (ESI) from his Facebook account is incomplete and necessitates an IT vendor to
collect, search, and produce responsive ESI. Also, Bauer again seeks to amend his complaint for a
sixth time and to supplement it for the third time.

### III.    ANALYSIS

**A.  Motion for Leave to File Third Supplemental and Sixth Amended Complaint**

The parties stipulated under Rule 15(d) of the Federal Rules of Civil Procedure to allow
Bauer to file a "Third Supplemental and Sixth Amended Complaint" (Dkt. 145). Bauer's proposed
amendments include (1) adding former County Commissioner, Steven Bradshaw, as a new
defendant in his individual capacity; (2) alleging that Omodt filed a bar complaint against Bauer
with the Idaho State Bar in February 2024; and (3) alleging the County terminated Bauer's
employment effective November 1, 2024 (Dkt. 145-2 at ¶¶ 8, 92-94). As discussed below, the
Court grants Bauer permission to supplement his complaint to assert these latter two new
allegations but denies his request to join Bradshaw as a new defendant. *See* Dist. Idaho Loc. Civ.
R. 7.3 (providing stipulations are not effective unless court approves).

1.  **Legal Standard**

Rule 15 governs the amendment and supplementation of pleadings. With respect to amendments made as a matter of course before trial, Rule 15(a) permits a party to amend a pleading "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a), however, does not govern motions to amend filed after the scheduling order deadline. Rather, the more restrictive provisions of Rule 16(b) of the Federal Rules of Civil Procedure apply and require a showing of "good cause." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

With respect to supplementing a pleading, Rule 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Courts have broad discretion to allow supplemental pleadings. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (citing Fed. R. Civ. P. 15, advisory committee's note). Because Rule 15(d)'s purpose is to promote "judicial economy and convenience," supplementing a complaint is generally "favored." *Keith*, 858 F.2d at 473. Rule 15(d), however, does not permit introduction of a "separate, distinct and new cause of action." *Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

Courts typically construe Rule 15(d) liberally "absent a showing of prejudice." *Keith*, 858 F.2d at 475 (citation omitted). "The five factors commonly used to evaluate the propriety of a motion for leave to amend (and thus, a motion to supplement) are: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Lyon v. U.S. Immigr.*

*& Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Additionally, motions to amend which seek to add new parties must satisfy Rule 20's requirements for permissive joinder. *See Desert Empire Bank v. Ins. Co. of North America*, 623 F.2d 1371, 1374 (9th Cir. 1980); *Singleton v. Kernan*, No. 3:16-cv-2462-BAS-NLS, 2017 WL 4021536, at *3 (S.D. Cal. Sept. 12, 2017). Rule 20 is designed to promote judicial economy and to reduce inconvenience, delay, and added expense. *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (citing *Guedry v. Marino*, 164 F.R.D. 181, 185 (E.D. La. 1995)). Under Rule 20, new defendants may be permissively joined to an action if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). "[O]nce these requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank*, 623 F.2d at 1375).

### 2. Failure to Address Rules 16 and 20

Here, Bauer originally named Bradshaw as a defendant in his "official capacity" (Dkt. 33 at ¶ 6). In response, Bradshaw moved to dismiss the action against him, arguing that a local government entity, not an officer acting in his official capacity, is the proper defendant in a § 1983 action (Dkt. 55) (citing cases). Bauer responded, noting he had already proposed voluntarily dismissing Bradshaw and would have stipulated to his dismissal (Dkt. 60). Thereafter, the Court

dismissed Bradshaw as a defendant (Dkt. 64). Now, Bauer seeks to add Bradshaw as a defendant in his "individual capacity" (Dkt. 145-2 at 1) (proposing naming Bradshaw in his individual capacity). Bauer and the existing Defendants stipulate that Bauer may add Bradshaw as a new defendant in his individual capacity (Dkt. 145).

The stipulation to add Bradshaw as a new defendant, however, fails to address the applicable standards for amending the complaint. The Court's deadline to amend pleadings to join additional parties expired on July 28, 2023 (Dkt. 75). Neither party has requested an extension of that deadline, despite otherwise requesting amendments to the scheduling order more than once. Because the deadline to amend the pleadings has expired, Rule 16 requires a "good cause" showing for an amendment. *See Johnson*, 975 F.2d at 608. The parties do not address this standard, however. Likewise, the parties again fail to address Rule 20's requirements.[2]

Regardless, the Court finds that adding Bradshaw as a defendant in his individual capacity at this stage of the case would be fundamentally unfair and would prejudice Bradshaw because the case has been pending since July 2022; the Court has previously dismissed Bradshaw as a defendant; the parties have already conducted significant discovery; and Bauer has already amended his complaint numerous times. *See Coleman*, 232 F.3d 1296 (providing joinder must comport with principles of fundamental fairness and not result in prejudice). Moreover, the Court

---

[2]    The parties have previously proposed joining new defendants in their individual capacities while ignoring Rule 20. In May 2024, Bauer sought to add Rosedale and Omodt as defendants in their individual capacities and did not address Rule 20's requirements to join new parties. (Dkt. 88-1) (seeking to add Rosedale and Omodt in their individual capacities). Although Defendants initially opposed the joinder, they did not address Rule 20, and then they subsequently withdrew their opposition (Dkts. 91, 105). Thereafter, the Court ordered the parties to provide supplemental briefing regarding Rule 20's applicability (Dkt. 109). After the parties briefed the issue, the Court granted Bauer's motion (Dkt. 114).

finds amending the complaint to add Bradshaw to the case is futile. *See Chudacoff v. Univ. Med. Ctr. Of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (providing amendment may be denied if futile). Although Bauer states he is naming Bradshaw in his individual capacity, he alleges no facts showing Bradshaw's individual involvement, despite having already deposed Bradshaw. Instead, Bauer alleges only that Bradshaw was a commissioner on the BOCC; he is "responsible" for the County's actions; he allegedly exerted pressure over Bauer's supervisor (although the allegations provide no specifics about that conduct); and Bradshaw allegedly heard derogatory comments Ptashkin made about Bauer. (Dkt. 145-2 at ¶¶ 8, 43, 66).

These proposed allegations are insufficient to allege a claim against Bradshaw in his individual capacity. Accordingly, adding Bradshaw as a new defendant would undermine judicial economy and increase inconvenience, delay, and expense. *Coughlin*, 130 F.3d at 1351 (noting "Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense"). For these reasons, the Court denies the parties' stipulated motion to allow Bauer to add Bradshaw as a new defendant in his individual capacity.

The Court is less concerned, however, about Bauer supplementing his complaint with new allegations against existing defendants. As noted above, Bauer's proposed allegations include that the County terminated his employment in November 2024 and that Omodt filed a bar complaint against him. Although Omodt filed the bar complaint in February 2024, Bauer alleges he did not learn about it until February 2025 (Dkt. 145-2 at ¶ 92). Also, when Bauer filed his Fifth Amended Complaint in September 2024 (Dkt. 115), the County had not yet terminated him (Dkt. 145-2 at ¶ 93). Further, the supplemental allegations involve existing defendants, i.e., the County and Omodt, who do not oppose the supplementation (Dkt. 145). For these reasons, the Court grants

**MEMORANDUM DECISION AND ORDER - 8**

Bauer's request to supplement his complaint to add new allegations about his terminations and Omodt's bar complaint (Dkt. 145-2 at ¶¶ 92-93).

## B. Attorney-Client Privilege Waiver

Bauer also moves the Court for a ruling that the County has waived its attorney-client privilege and to compel deposition testimony and any withheld documents for which the County has waived its privilege (Dkt. 126-1).

### 1. Legal Standard

Under Rule 501 of the Federal Rules of Evidence, "federal common law generally governs claims of privilege." *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). Where the same evidence relates to both federal and state law claims, federal privilege law governs. *Id.*; *Fenton v. Fruitland Sch. Dist. No. 373*, No. 1:19-CV-00447-MCE, 2023 WL 2814513, at *4 (D. Idaho Apr. 5, 2023). "As with all evidentiary privileges, the burden of proving the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it." *Weil v. Investments/Indicators Research and Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). An eight-factor test applies to determine whether the attorney-client privilege protects a communication:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

**MEMORANDUM DECISION AND ORDER - 9**

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (citation omitted). Additionally, the privilege may extend to third parties who have been engaged to assist an attorney in providing legal advice. *Sanmina Corp.*, 968 F.3d at 1116. Because the attorney-client privilege impedes full and free discovery of the truth, courts strictly construe the privilege. *Weil*, 647 F.2d at 24.

Even if a communication meets the requisite factors to be attorney-client privileged, a party can expressly or impliedly waive that privilege. A party expressly waives the privilege if it voluntarily discloses the communication to a "third party who is not bound by the privilege or otherwise shows disregard for the privilege by making the information public." *Sanmina Corp.*, 968 F.3d at 1116-17. In such an instance, the waiver is broader than the voluntarily disclosed communication. Courts have "widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications *on the same subject.*" *Weil*, 647 F.2d at 24 (emphasis added).

Also, a party impliedly waives the attorney-client privilege when "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995); *see also Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Implied waivers rest on "the fairness principle," which "prevent[s] a party from using the privilege as both a shield and a sword." *Sanmina Corp.*, 968 F.3d at 1117 (quotations and citation omitted). In other words, a party "may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id.* (quotation and citation omitted). For example, "the assertion of the

advice of counsel as a substantive defense renders the attorney-client privilege waived." *Fenton*, 2023 WL 2814513, at *4. A waiver occurs even if the privileged information offered does not provide a complete defense. *Clarke v. White Pine Charter School, Inc*., et al., No. 4:20-CV-00214-BLW, 2022 WL 280455, at *9 (D. Idaho Jan. 31, 2022).

### 2. Express Waiver of Attorney-Client Privilege

Because Bauer continued to work as an attorney for the County for more than a year after he sued Defendants, this case is riddled with attorney-client privilege issues. Much of the parties' dispute about the privilege centers around an express agreement the parties reached during depositions, which they refer to as the "bubble" agreement. As Bauer's counsel explains:

> During depositions in this matter, Defendants have asserted privilege *over many hours of testimony* about communications and documents. To facilitate collecting evidence, the parties agreed that witnesses would answer questions over which they assert attorney-client privilege without voluntarily waiving that privilege, in exchange for [Bauer] stipulating that, pending further stipulation or Court order, the privilege would not be waived. Testimony and evidence provided subject to this condition were referred to as the "bubble."

(Dkt. 118-2) (emphasis added).

Bauer argues that despite the parties' "bubble" agreement, defense witnesses refused to answer questions on the grounds of attorney-client privilege, often in response to defense counsel's objections (Dkt. 126-1 at 5). Bauer provides examples from seven different depositions where witnesses apparently asserted the privilege (*id.* at 5-8). Meanwhile, Defendants do not address the "bubble" agreement in their response at all (*see generally* Dkt. 139).

Despite Defendants' failure to address the "bubble" agreement, the Court has located at least one instance in the record in which defense counsel explained his understanding of the agreement during a deposition:

[Defense Counsel]: [W]e've gone into what we call the bubble. I recognize that it's going to be subject to potential motions coming up. But the bubble has been a time where the parties have agreed that information or answers given in the bubble can only be used by attorneys, retained experts and parties, and not disclosed further absent stipulation or court order.

[Bauer's Counsel]: Agreed.

(Dkt. 139-3 at 4).

Instead of addressing this "bubble" agreement in their opposition, Defendants generally argue the Court should deny Bauer's request to compel deponents to disclose attorney-client privileged communications. Further, Defendants respond to Bauer's examples of deponents improperly asserting the privilege by arguing defense counsel's objections were "narrow and tailored," by criticizing Bauer's counsel for his failure to formulate questions to avoid implicating privileged communications, or by claiming the witnesses fully answered the questions (Dkt. 139 at 8-17). Defendants' arguments, however, fail to address the issue—namely what is the meaning, the scope, and the consequences of the parties' "bubble" agreement? Defendants offer no argument regarding the agreement's meaning, including how Defendants could allow the disclosure of attorney-client privileged communications during depositions[3] and yet still maintain a privilege.

Importantly, confidentiality is the hallmark of the attorney-client privilege, and destroying confidentiality by sharing privileged information with an opponent during depositions necessarily waives the privilege. As the Ninth Circuit has noted, "once the cat is already out of the bag, it may

---

[3]    Indeed, the record shows Defendants repeatedly allowed deponents to discuss attorney-client privileged communications (*see, e.g.*, Dkt. 119-3 (regarding County's outside law firm "Investigation of Allegations of Workplace Complaints at Bonner County); Dkt. 119-19 (regarding disclosure of events occurring in executive session); Dkt 119-24 (redacting legal advice from Louis Marshall to County); Dkt 119-34 (disclosing Bauer's prior legal advice to County); Dkt. 126-1 at 8-11, § III(B)(1)-(7)).

not be possible to get it back in." *Agster v. Maricopa Cnty.*, 422 F.3d 836, 838 (9th Cir. 2005). Accordingly, the Court finds that when Defendants voluntarily allowed witnesses to testify about attorney-client privileged communications during depositions, Defendants expressly waived the privilege regarding those communications. Further, the Court finds that such a waiver constitutes a waiver of all communications about the same subject matter. *See Weil*, 647 F.2d at 24 (noting courts have "widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privileged as to all other such communications on the same subject").

The Court declines, however, to rule on the specific instances in which Defendants waived an attorney-client privileged communication during depositions under the "bubble" agreement. In support of his motion, Bauer identifies only examples in which "witnesses refused to answer questions on the grounds of attorney-client privilege" (Dkt. 126-1 at 5). Key to determining whether those questions involved subject matters for which Defendants had already waived the attorney-client privilege is whether Defendants allowed a *prior* disclosure of an otherwise privileged communication about that same subject matter. Bauer, however, does not provide this necessary element of foundation. Rather, it appears he only provides the excerpts of deposition transcripts showing the objections about which he complains, not the prior disclosures which purportedly waived the privilege. Regardless, the Court is not obligated to review "many hours of depositions" in search of the appropriate foundation. *See, e.g.*, *Indep. Towers of Wa. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (noting court not required to search record). However, because Defendants have failed to meet their burden to show an enforceable attorney-

client privilege and have undoubtedly already waived their privilege with respect to certain subject matters, the Court will allow Bauer to conduct discovery regarding those subject matters.

### 3.   Implied Waiver of Attorney-Client Privilege

Bauer also asserts Defendants impliedly waived their attorney-client privilege by claiming his "legal advice and conduct violated the Idaho Rules of Professional Conduct" and his "advice and conduct were wrong, imprudent, [and] incompetent" (Dkt. 126-1 at 11-12). In support, Bauer relies on Defendants' discovery responses which raise these allegations[4] (Dkt. 118-10 at 7-8; Dkt. 126-1 at 12). Further, Bauer contends Defendants' discovery responses rely on communications between him and the County's outside counsel (Dkt. 126-1 at 13). Based on these and other examples, Bauer argues that "by claiming [his] legal advice and privileged communications with County officials and outside counsel justify [the County's] decision to take adverse employment actions against [him], Defendants have put that legal advice and privileged communications at issue" (*id.* at 14). Then, Bauer generally argues he should be able to testify about his legal advice and obtain others' testimony about that advice (*id.* at 14-15). Meanwhile, Defendants do not respond to Bauer's argument that they impliedly waived their attorney-client privilege by asserting certain defenses (*see generally* Dkt. 139).

In principle, the Court agrees with Bauer that a party, including a defendant, impliedly waives its attorney-client privilege by placing legal advice at issue in a lawsuit. *See, e.g.*, *Clarke*, 2022 WL 280455, at *9 (ruling defendants waived attorney-client privilege for purpose of advice, opinions, and other information received regarding open meeting violation). "'[P]arties should not

---

[4]      Additionally, Bauer also references excerpts from an expert report, which he files in the record (*see* Dkt. 118-13).

be able to selectively disclose privileged communications they consider helpful while claiming privilege on damaging communications relating to the same subject.'" *Fenton*, 2023 WL 2814513, at *4 (citing *Aspex Eyeware, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1093 (D. Nev. 2003)).

Bauer, however, does not identify any specific attorney-client privileged communication which he contends Defendants have placed at issue or the alleged defense to which it relates. For this reason, the Court cannot rule on those communications for which Defendants have waived their privilege and the scope of that waiver, except that it is a subject matter waiver. Generally, however, if Defendants rely on an attorney-client privileged communication to justify any alleged adverse action taken against Bauer, then they impliedly waive their privilege regarding that advice, including the circumstances surrounding the advice, such as why the advice was given, who disagreed with the advice, what was the disagreement, and how was it resolved.[5]

### 4.  The Parties' Meet and Confer Obligations

In summary, the Court finds that Defendants expressly waived their privilege for purposes of this lawsuit by allowing deponents to testify about Defendants' attorney-client privileged communications during depositions under the parties' "bubble" agreement. Further, the Court agrees that if Defendants place otherwise privileged communications at issue to defend their conduct, then they impliedly waive that privilege. These waivers apply to the subject matter of the disclosed communications. Beyond determining that the waivers relate to the same subject matter,

---

[5]    Any waiver, however, obviously does not apply to attorney-client privileged communications between Defendants and their outside litigation counsel who are defending or have previously defended this action. If a Defendant communicated information to outside counsel after reasonably anticipating this litigation or during the litigation and that communication meets the eight-factor test in *Graf*, 610 F.3d at 1156, then Defendants' assertion of any defense against Bauer's claims does not waive that privilege with outside counsel.

MEMORANDUM DECISION AND ORDER - 15

however, the Court is unable to determine the scope of Defendants' waivers based on the parties' arguments.

Accordingly, the Court orders the parties to meet and confer to specifically identify communications for which Defendants have waived their attorney-client privilege. Specifically, the parties should agree on the subject matters for which Defendants have waived their attorney-client privilege by allowing disclosures under the "bubble" agreement. If Defendants allowed a deponent to testify about a privileged communication but then refused to allow that deponent or another deponent to testify about that same subject matter, then Bauer may reopen that deposition *but only* to inquire about the disclosed subject matter. Further, if Defendants' subject matter waiver implicates documents, Defendants must produce those documents.

Further, Defendants must specifically identify privileged communications on which they intend to rely to defend this case, and they must produce those communications and any others about the same subject matter. To the extent Defendants identify communications on which they intend to rely to defend against Bauer's claims, Bauer is entitled to depose witnesses about those communications, if he has not already.

Finally, defense counsel's explanation of the "bubble" agreement (quoted above) suggests the agreement's purpose is to protect against the disclosure of attorney-client privileged communications in the public record. Because that appears to be at least one of the agreement's purposes, the Court grants Bauer's unopposed motion to seal (Dkt. 117).

### C. Mediation Privilege

The parties mediated this case unsuccessfully on May 12, 2023 (Dkt. 115 at ¶ 61). Bauer now moves to compel Defendants to identify a deponent under Rule 30(b)(6) of the Federal Rules

of Civil Procedure to testify about Defendants' alleged "retaliatory threats during mediation" and to "produce all submissions, letters, and correspondence with [the] mediator" (Dkt. 141 at 4). Bauer argues this information is admissible under Rule 408 of the Federal Rules of Evidence. Meanwhile, Defendants oppose Bauer's motion describing it as "seeking an extreme and extraordinary relief." (Dkt. 139 at 2, 18, 19). As discussed below, the Court finds that the mediation information Bauer seeks is not admissible under Rule 408(a) and that Bauer is not entitled to discover that information.

### 1. Legal Standard

Rule 408 governs the admissibility of evidence of "compromise offers and negotiations." Rule 408's protections against admissibility of compromise negotiations are designed to foster the settlement of legal disputes. *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1342 (9th Cir. 1987). Whether evidence of compromise offers or negotiations is admissible under Rule 408 depends on the purpose for which a party offers the evidence. Rule 408(a) provides that evidence is *inadmissible* if a party offers it "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).

Meanwhile, Rule 408(b) provides an exception to Rule 408(a). Specifically, Rule 408(b) provides evidence may be admissible for "another purpose" other than to prove or disprove a claim, and it gives three illustrative examples, including to prove a witness's bias or prejudice, to negate undue delay, or to prove an effort to obstruct a prosecution. Rule 408(b) also allows for the admissibility of evidence supporting a claim "based upon some wrong that was committed in the course of the settlement discussions." § 5314 Exceptions—Other Permissible Uses, 23 Fed. Prac. & Proc. Evid. § 5314 (2d ed.) (identifying, for example, claims of libel, assault, and breach of

contract). The party seeking to exclude evidence under Rule 408 bears the burden of showing the communications are offered to prove or disapprove the validity or value of claim. *See Rondor Music Int'l, Inc. v. TVT Records LLC,* No. CV 95-2909-JTL, 2006 WL 5105272, at *11 (C.D. Cal. Aug. 21, 2006) ("A litigant asserting the applicability of Rule 408 must make a substantial showing that the communications were part of the attempts to settle the dispute.").

### 2.  Inadmissibility under Rule 408(a)

Bauer seeks discovery of events that occurred during the failed mediation of this case. Specifically, Bauer argues "Defendants threatened that unless he agreed to dismiss his lawsuit for nothing or leave his job for a settlement amount of their choosing, they would call two recognized jurists as experts to testify that he violated the rules of professional conduct" (Dkt. 125-1 at 5). He contends that this conduct is a "form of illegal retaliation"; it is admissible under Rule 408(b) as "evidence of wrongdoing during mediation"; and because the evidence is admissible, he is also "necessarily" allowed to discover it (Dkt. 125-1 at 10).

In determining whether evidence is admissible under Rule 408(b) for "other purposes," the Court must first determine whether the evidence is inadmissible under Rule 408(a) as proof or disproof of a claim's validity. At the time of the parties' failed mediation, Bauer's operative complaint was his second amended complaint (Dkt. 40). That complaint alleged Defendants violated the IPPEA, which provides "a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of law, rule or regulation." Idaho Code § 6-2101.

In support of his IPPEA claim, Bauer specifically alleged that "the legal advice and other communications Bauer had with the Defendants [were] within the purview and protection of the

[IPPEA]"; his legal advice to Defendants was a "protected activity"; and his advice "was consistent with and in furtherance of public policies of the State of Idaho, including the Idaho Code of Professional Responsibilities." (Dkt. 40 at ¶¶ 82-83). Bauer continues to maintain these allegations in his current fifth amended complaint (Dkt. 115 at ¶¶ 101-03).

Bauer's allegations that his legal advice was a protected activity under the IPPEA and complied with the Idaho Rules of Professional Responsible places at issue the ethical nature of his advice. Defendants are entitled to refute these allegations. As a result, the Court finds Defendants disclosed their intent to present expert testimony that Bauer's advice "violated the rules of professional conduct" to demonstrate—for purposes of negotiation during mediation—that they could disprove Bauer's allegations to the contrary. Defendants' disclosure during the mediation cannot fairly be construed as retaliating against Bauer for filing the lawsuit, otherwise all Defendants' efforts to defend against Bauer's claims would be subject to the same challenge. Because Defendants offered the information at mediation to disprove (at least in part) Bauer's IPPEA claim, the evidence is inadmissible under Rule 408(a).

Bauer's reliance on *Carney v. American Univ.*, 151 F.3d 1090 (D.C. Cir. 1998), to argue the contrary is misplaced. In that case, the University employed Carney as an interim dean. *Id.* at 1092. When the University did not select her as the permanent dean and then eliminated her position, she claimed the University racially discriminated against her. *Id.* Before the University offered Carney severance pay, she signaled her intention to sue. *Id.* Although the University acknowledged in a settlement letter that Carney might "arguably" be entitled to three months of severance pay under the personnel manual, it allegedly refused to consider paying Carney that amount because she had already expressed her intent to sue. *Id.* at 1095.

**MEMORANDUM DECISION AND ORDER - 19**

On appeal, the D.C. Circuit concluded the settlement letter was admissible under Rule 408(b). *Carney*, 151 F.3d at 1095. In support, it reasoned that the letter could "be used to establish an independent violation" that the University retaliated against Carney for intending to file suit, which was a retaliatory claim "unrelated to the underlying [discrimination] claim." *Id.* Further, the D.C. Circuit reasoned that "Carney offered the settlement [letter] not to prove the University discriminated against her, but to show that the University committed an entirely separate wrong by conditioning her benefits on a waiver of her rights." *Id.* at 1096.

This case is distinguishable from *Carney*. As noted above, at the mediation, Defendants shared their intention to present expert testimony about Bauer's legal advice to disprove Bauer's allegations in support of his IPPEA claim that his advice was ethical. Because Defendants' conduct at the mediation related to disproving Bauer's IPPEA claim, it was not "unrelated to the underlying claim" and is inadmissible under Rule 408(a).

Likewise, *Hotchkiss v. CSK Auto, Inc.*, No. 12-CV-0105-TOR, 2013 WL 12097445 (E.D. Wash. Mar. 5, 2013), on which Bauer relies, is distinguishable. In that case, defendants moved to exclude evidence that the parties engaged in settlement discussions concerning Hotchkiss's sexual orientation discrimination claim. *Id.* at *1. After receiving Hotchkiss's charge of discrimination, defendants sent him a settlement letter offering him a position of employment in exchange for the withdrawal of his charge and a release of all claims. *Id.* Hotchkiss argued this offer did not relate to proof or disproof of his discrimination claim but rather was evidence of retaliation because it required him to withdraw his charge. *Id.* The court agreed, relying on *Carney*.

Unlike *Carney* or *Hotchkiss*, Defendants' intention to present expert testimony was not in retaliation for Bauer filing suit; rather, it was to disprove Bauer's express allegations in support of

**MEMORANDUM DECISION AND ORDER - 20**

his IPPEA claim that his legal advice was ethical. Accordingly, Defendants' conduct at the mediation is inadmissible under Rule 408(a), and the Court rejects Bauer's argument that he is entitled to discovery regarding the issue. *See Mundy v. Household Fin. Corp.*, 885 F.2d 542, 546 (9th Cir. 1989) (ruling evidence of employee severance offered contemporaneously with release of claims not barred when offered as evidence of discrimination, but later-made offers to settle claim are barred); *Coleman*, 232 F.3d at 1291 ("As the settlement offer was not contemporaneous with termination and the consideration was additional to the standard severance benefits, the district court did not abuse its discretion in excluding the offer.") (citation omitted).

### D. Facebook Discovery

Bauer asserts McDonald's response to Bauer's request for production of ESI from McDonald's Facebook account is incomplete (Dkt. 125-1 at 2-5, 6-8). Bauer seeks to compel McDonald to provide his Facebook account to an IT vendor to collect, search, and produce responsive documents and, further, to depose McDonald about any newly produced messages (Dkt. 141 at 3). The Court finds Bauer's request is disproportionate to the needs of this case.

#### 1. Legal Standard

Rule 26 of the Federal Rules of Civil Procedure addresses the scope of discovery and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

A party seeking discovery may move for an order compelling production if an opposing party has failed to answer an interrogatory, participate in a deposition, or produce requested documents. *See* Fed. R. Civ. P. 37(a)(3). The party seeking to compel discovery bears the initial burden of showing the request is relevant. *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). If the moving party establishes the information sought is discoverable, the party resisting discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

### 2. Facebook Discovery

Bauer argues that McDonald's Facebook messages "reflect[] public defamatory attacks on [Bauer's] honesty, competence, and legal advice" and that McDonald's production of those messages is incomplete (Dkt. 125-1 at 4). Bauer bases his assertion of incompleteness on the nature of McDonald's prior production. Initially, Bauer requested McDonald collect ESI from McDonald's Facebook using specific, voluminous search terms and a specific retrieval method (Dkt. 116-4 at 8). Although McDonald used Bauer's requested retrieval method to collect ESI, he declined to apply Bauer's search terms. Instead, McDonald applied twenty-five of his own search terms and produced 129 pages of documents from his Facebook account (Dkt. 116-5).[6]

In support of his assertion that McDonald's production is incomplete, Bauer submits the declaration of Josiah Roloff (Dkt. 123). Roloff is a "digital forensic expert with experience in the preservation, collection, and analysis of [ESI]" (*id.* at ¶ 1). Roloff states he reviewed the

---

[6]    Later, Bauer modified his request to seek information from certain Facebook folders involving nineteen individuals (Dkt. 116-6). In responding to Bauer's modified requests, McDonald referred to his prior responses (Dkt. 116-10).

"Meta/Facebook data" McDonald produced (*id.* at ¶ 2). Regarding this data, Roloff states the produced messages have "abnormal characteristics," including that "portions of messages appear whited-out and replaced with faint lines, underscores, or boxes" and that these abnormalities indicate "the embedded media files contained in those messages were not properly linked" (*id.* at ¶ 3). Further, he notes that "the headings of some portions of the Meta/Facebook data produced are missing" and that "the ends of other messages have been cutoff or are truncated at the beginning and/or end" (*id.*). Based on this information, Roloff opines McDonald's production "lacks reliability and completeness" (*id.* at ¶ 4).

The Court declines to order that an IT vendor collect, search and produce ESI from McDonald's Facebook account for several reasons. First, neither Roloff nor Bauer explain how the missing information is relevant. For example, Bauer fails to identify any messages he expected McDonald to produce but which were not produced. Although Bauer cites to his wife's deposition testimony that she saw certain messages on McDonald's Facebook, which she claims McDonald later deleted, this testimony does not establish the messages still exist and have not been produced. Rather, it establishes they were deleted, and neither Bauer nor Roloff offers any explanation how deleted information can be recovered now.

Second, although Bauer complains about McDonald not using Bauer's voluminous search terms identified in his request for production, the parties expressly agreed that any search of McDonald's ESI would be limited to "a total of 25 keyword search terms" (Dkt. 79 at 10). In contrast to this agreement, the Court estimates Bauer proposed more than triple the agreed upon number of search terms. Bauer, however, never sought leave to require more than twenty-five search terms.

**MEMORANDUM DECISION AND ORDER - 23**

Third, because Bauer does not establish the missing ESI is relevant, his complaints about McDonald's ESI production generally raise issues about the quality of that production. As Defendants note, however, Bauer never raised these specific complaints before moving to compel McDonald. Moreover, issues about the quality of McDonald's production are issues the parties can and should resolve without the Court's intervention. For all these reasons, the Court finds requiring McDonald to submit his Facebook account to an IT vendor for collection, search, and production of further ESI is not proportional to this case's needs.

### E.  Amended Deadlines

The parties filed a stipulation to extend certain deadlines but some of those proposed extensions have now elapsed (Dkt. 144). Further, Defendants most recently represented that "discovery in this matter is not yet complete" (Dkt. 149). Accordingly, the parties are ordered to meet and confer regarding what discovery remains to be completed, both according to this Order and otherwise. By no later than thirty days following this Order's issuance, the parties must submit a jointly proposed amended litigation schedule to include the following deadlines: factual discovery cutoff; expert witness disclosures, including responses and rebuttals; expert witness discovery cutoff; a dispositive motion deadline; and a mediation deadline.

## IV.    ORDER

1.    Plaintiff's [original] Motion to Compel Defendant McDonald to Comply with Request for Relevant Facebook Records and for Determination of Defendants' Assertion of Mediation Privilege (Dkt. 116) is **DENIED** as **MOOT**.

2.    Plaintiff's Conditional Motion to Seal (Dkt. 117) is **GRANTED**.

3.      Plaintiff's [original] Motion to Compel Deposition Testimony and Motion for Determination of Defendants' Implied Waiver of Attorney-Client Privilege (Dkt. 118) is **DENIED** as **MOOT**.

4.      Plaintiff's Amended Motion to Compel Defendant McDonald to Comply with Request for Relevant Facebook Records and for Determination of Defendants' Assertion of Mediation Privilege (Dkt. 125) is **DENIED**.

5.      Plaintiffs' Amended Motion to Compel Deposition Testimony and Motion for Determination of Defendants' Implied Waiver of Attorney-Client Privilege (Dkt. 126) is **GRANTED**.

6.      The parties' [original] Stipulated Motion for Leave for Plaintiff to File Third Supplemental and Sixth Amended Complaint (Dkt. 140) is **DENIED** as **MOOT**.

7.      The parties' [amended] Stipulated Motion for Leave for Plaintiff to File Third Supplemental and Sixth Amended Complaint (Dkt. 145) is **GRANTED** in part and **DENIED** in part.

8.      The parties' Stipulated Motion to Extend Deadlines (Dkt. 144) is **DENIED** as **MOOT**.

9.      The parties must **MEET AND CONFER** regarding what discovery remains to be completed and must submit a jointly proposed amended litigation schedule by **NO LATER THAN THIRTY (30) DAYS** following this Order's issuance.

DATED: August 19, 2025

Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 25